(173 P.3d 656)
No. 96,326

STATE OF KANSAS, *Appellee,* v. VERONICA J. SPANGLER, *Appellant.*

Opinion filed December 21, 2007.

*Randall L. Hodgkinson* and *Melissa M. Schoen,* legal intern, of Kansas Appellate Defender Office, for appellant.

*Eric Godderz,* county attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before BUSER, P.J., GREEN and CAPLINGER, JJ.

GREEN, J.: Veronica Spangler appeals from her convictions and sentences after a jury trial of manufacture of methamphetamine in violation of K.S.A. 2006 Supp. 65-4159, conspiracy to manufacture methamphetamine in violation of K.S.A. 2006 Supp. 65-4159 and K.S.A. 2006 Supp. 21-3302, possession of methamphetamine in violation of K.S.A. 65-4107(d)(3), and possession of drug manufacturing paraphernalia in violation of K.S.A. 2006 Supp. 65-4152(a)(3). First, Spangler argues that the trial court erred in al-

lowing the State to amend the conspiracy charge at the close of the State's evidence at trial. We agree. By changing the complaint to charge specific overt acts sufficient for the crime of conspiracy to manufacture methamphetamine and by changing the name of the party who allegedly committed the overt acts, the State was allowed to prosecute Spangler for a different crime from the crime alleged in the original complaint. Moreover, we determine that the amendment, which forced Spangler to change her defense to the conspiracy charge in the middle of trial, prejudiced her substantial rights. Therefore, the State should not have been allowed to amend the conspiracy charge under K.S.A. 2006 Supp. 22-3201(e).

Next, Spangler contends that her convictions for manufacture of methamphetamine and conspiracy to manufacture methamphetamine were not supported by sufficient evidence. We disagree. After reviewing the evidence in the light most favorable to the prosecution, we are convinced that a rational jury could have found Spangler guilty beyond a reasonable doubt. Finally, Spangler argues that she should be resentenced to drug severity level 4 felonies for her convictions of manufacture of methamphetamine and conspiracy to manufacture methamphetamine because manufacture of methamphetamine under K.S.A. 2006 Supp. 65-4159 is identical to use of drug paraphernalia under K.S.A. 2006 Supp. 65-4152(a)(3). Because we are reversing Spangler's conviction for conspiracy to manufacture methamphetamine, it is unnecessary to address Spangler's argument as it relates to her sentence on the conspiracy charge. After considering the underlying facts of this case in relation to the statutory elements of the crimes as required by *State v. Fanning*, 281 Kan. 1176, 135 P.3d 1067 (2006), we determine that manufacture of methamphetamine under K.S.A. 2006 Supp. 65-4159(a) is identical for sentencing purposes to use of drug paraphernalia under K.S.A. 2006 Supp. 65-4152(a)(3). Accordingly, we reverse Spangler's conviction for conspiracy to manufacture methamphetamine, we affirm her convictions for manufacture and possession of methamphetamine and possession of drug manufacturing paraphernalia, and we vacate her sentence for manufacture of methamphetamine and remand for resentencing as a drug severity level 4 felony.

In October 2004, law enforcement officers began investigating and surveilling a pasture owned by Charles "Tug" Atchison based on their suspicions of a methamphetamine lab at that location. Officers watched the pasture several times in 2004 until the weather became bad.

On March 15, 2005, officers were again watching Atchison's pasture when they saw someone exit a truck, drop an item in the feed bin on Atchison's land, and reenter the truck. As the truck was leaving the pasture, officers stopped and arrested the truck's occupants, Raymond Roberts, Walter O'Handlen, and Karen O'Handlen. In the truck, officers found cold pills, lithium batteries, a cellophane wrapper containing what appeared to be methamphetamine, a coffee filter with finished methamphetamine, starter fluid with ether, and receipts listing items used in the manufacture of methamphetamine.

When interviewed at the police station, Walter and Karen admitted that they had been involved in manufacturing methamphetamine with Roberts that day. Walter and Karen said that Raymond had contacted them and asked them to bring some items out to Atchison's pasture. Walter and Karen admitted that they purchased ingredients to manufacture methamphetamine and had helped Roberts to manufacture methamphetamine. Karen testified at trial that she and Walter supplied the batteries, cold pills, and starter fluid but that the sludge (a mixture of pills and lithium) was already at Atchison's when they arrived. When asked about Spangler's involvement in the manufacture of methamphetamine, Walter and Karen told the interviewing officer that Spangler would buy ingredients, such as starter fluid, pills, batteries, and other items needed to manufacture methamphetamine.

During the early morning hours of March 16, 2005, a search warrant was executed at Roberts' home. Spangler lived with Roberts, and they had a child together. During the search, officers discovered the following items: a glass dish containing a powdery residue and a razor blade in a child's bedroom; a glass pipe; a brass pipe; a driver's license with a powdery residue; a mirror and knife containing residue; and scanner radios. In addition, officers removed from the ceiling a bag containing pieces of foil, a plastic

pen tube, a glass smoking pipe, and a plastic baggie with residue. Later testing on the glass dish, the knife, the driver's license, one of the glass pipes, and the plastic baggie detected methamphetamine.

Spangler was not home during the search. She was later stopped in Overbrook and arrested. While in jail, Spangler requested to speak with Sheriff Laurie Dunn. After waiving her *Miranda* rights, Spangler told Dunn that she normally knew when the manufacture of methamphetamine or "cook" was going to occur. Spangler described to Dunn where they got the ingredients, what she had done in the past to purchase materials to make methamphetamine, and to whom they sold the drugs. Spangler said that she had purchased lithium batteries, starter fluid, pills, acid, and coffee filters in the past for the cooks. Spangler told Dunn that she and Roberts had a family plan. They had arranged it so that only one of them would be at the "cooks" at the same time. That way, if one of them was arrested, the other would be able to take care of the children. Spangler said that she had not been to any cook.

Spangler told Dunn that the cooks occurred at Atchison's and that Atchison would be paid in methamphetamine for the use of his land. Spangler told Dunn that after the cook, the methamphetamine was brought to her and Roberts' home where it would sometimes be cut. Spangler informed Dunn that the knife and driver's license found at her house were used to cut the methamphetamine. Spangler said that she usually delivered the methamphetamine to Atchison's property the following morning and would place it in a black plastic container located behind a shed.

Dunn and Spangler discussed the black bag that had been found in the ceiling of her home. Spangler told Dunn that the officers had missed some electric scales that she put in the ceiling the previous week. Spangler said that the glass dish in the children's room had been left there by Jeff Atchison.

Roberts was convicted of manufacture of methamphetamine and sentenced to 92 months in prison. Karen reached a plea agreement with the State and was sentenced to 50 months in prison. Walter also reached a plea agreement with the State and was sentenced to 50 months in prison. Spangler was charged with manufacture of

methamphetamine, conspiracy to manufacture methamphetamine, possession of methamphetamine, and possession of drug manufacturing paraphernalia. At trial, Spangler testified that she knew Roberts manufactured methamphetamine on Atchison's land. Nevertheless, she had nothing to do with the manufacture of methamphetamine. Spangler admitted that in the past, she had purchased items used to manufacture methamphetamine. Since her son was born in July 2003, however, she had not purchased those items.

William Kraus, the operator of a hardware store in Burlingame, testified that he turned Spangler's name into law enforcement because she had repeatedly purchased muriatic acid from his store. According to Kraus, Spangler purchased muriatic acid from his store in the spring of 2005. Spangler testified that she purchased the muriatic acid for drain problems at her home.

Spangler admitted to using methamphetamine daily around the time of her arrest. In the last 5 years, she had not used methamphetamine for only a year and a half. According to Spangler, she did not measure out the methamphetamine that Roberts had manufactured. Spangler acknowledged that she sometimes delivered methamphetamine to Atchison for payment for the use of his property. Spangler testified that she would call Atchison and let him know that she had delivered the methamphetamine. Spangler admitted to calling Atchison and telling him to take some acid to Roberts for the manufacture.

Spangler testified that on the afternoon of March 15, 2005, she gave Roberts a ride to Burlingame so that he could move a shed to his brother's property. Spangler later stopped to speak with Walter and Karen who had run out of gas and were parked near the old schoolhouse in Burlingame. According to Spangler, she found Roberts and told him where Walter and Karen were. According to Karen, however, Spangler bought them gas and told them where Roberts was. Spangler testified that when Roberts did not come home that evening, Spangler called around to their friends and was told that Roberts was in jail. Spangler called the jail and confirmed that Roberts was there. Spangler drove to a friend's house in Harveyville that night and used methamphetamine.

Roberts testified that he was making methamphetamine with Karen and Walter on March 15, 2005, at Atchison's property. According to Roberts, Karen and Walter had called him that day and told him they had purchased all the items to make the methamphetamine. Roberts told Karen and Walter to meet him at Atchison's property in Burlingame. Roberts testified that he told Spangler he was going to move a shed but did not mention to her that he would be manufacturing methamphetamine that day. According to Roberts, Spangler had not purchased items to manufacture methamphetamine since their son was born in July 2003. Roberts testified that he never manufactured methamphetamine in his and Spangler's home. Roberts further testified that he might have weighed, cut, and separated it in their home, but he never involved Spangler in this process. According to Roberts, he usually dropped off Atchison's portion of the methamphetamine when he left Atchison's land. Nevertheless, Roberts admitted that Spangler delivered Atchison's portion of the methamphetamine a couple of times.

Karen testified that she, Walter, and Roberts had been manufacturing methamphetamine since at least October 2004. According to Karen, they manufactured methamphetamine approximately every 2 weeks. Walter testified that Spangler was not at Atchison's property on March 15, 2005, but that he had seen her out there once. Karen testified that she had never seen Spangler at Atchison's property while they manufactured methamphetamine nor had she seen her manufacture methamphetamine. According to Karen, Spangler would help buy the pills and batteries for the cooks. Karen testified about a shopping trip in Lawrence just before Christmas during which Spangler purchased pills and batteries.

The jury found Spangler guilty of all four counts. Spangler was sentenced to 154 months in prison.

## I. Amendment of Complaint

First, Spangler argues that the trial court erred in allowing the State to amend the conspiracy charge at the close of the State's evidence at trial.

Under K.S.A. 2006 Supp. 22-3201(e), the trial court "may permit a complaint or information to be amended at any time before ver-

dict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." Therefore, "[a] two-part analysis determines whether an amendment prior to submission of the case to the jury may be permitted: (1) Does the amendment charge an additional or different crime? [and] (2) Are the substantial rights of the defendant prejudiced by the amendment? [Citations omitted.]" *State v. Matson*, 260 Kan. 366, 370, 921 P.2d 790 (1996). Prejudice is the determining factor. We review the determination on the prejudice prong for abuse of discretion. See *State v. Woods*, 250 Kan. 109, Syl. ¶ 1, 825 P.2d 514, *cert. denied* 506 U.S. 850 (1992). Discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Moses*, 280 Kan. 939, 945, 127 P.3d 330 (2006).

On March 18, 2005, Spangler was originally charged with conspiracy to manufacture methamphetamine as follows:

"That on or about the 15th day of March, 2005, in Osage County, Kansas, VERONICA JEAN SPANGLER did unlawfully, feloniously and intentionally agree with another person, to-wit: Walter O'Handlen, Raymond Roberts, and Karen O'Handlen to commit the crime of manufacturing methamphetamine as defined by K.S.A. 65-4159 and an overt act in furtherance of the conspiracy was committed by Raymond Roberts, Karen O'Handlen and Walter O'Handlen, to-wit: manufacture of methamphetamine; contrary to K.S.A. 21-3302 and 65-4159; a drug severity level 1 felony."

Just before the completion of the State's evidence at trial in November 2005, the prosecutor moved to amend the conspiracy charge to expand the time frame of when the crime occurred from on or about March 15, 2005, to between October 2004 to March 15, 2005. In addition, the prosecutor conceded that the complaint, which alleged only that the overt act was the manufacture of methamphetamine, was insufficient. The prosecutor sought to include in the conspiracy charge the overt acts of Spangler's purchase of ephedrine pills, muriatic acid, and lithium batteries and her involvement in the delivery of methamphetamine.

Spangler objected to the State's motion to amend the conspiracy charge, arguing that the proposed amendment was highly prejudicial. Spangler's counsel asserted that Spangler had relied on the charge since March 18, 2005, and that the preparation and cross-

examination in the case could not be changed. The trial court found that the wording in the initial complaint did not limit the conspiracy crime to only the 15th of March. Moreover, the trial judge stated that "as to the conspiracy, I don't think they could find proving conspiracy only on the 15th day of March." After determining that the amendments conformed to the evidence that had been presented in the case, the trial court allowed the prosecutor to amend the complaint.

Initially, Spangler maintains that the trial court's ruling constituted an acquittal of the conspiracy charge. Spangler focuses on the trial court's statement that the jury could not find that the conspiracy occurred *only* on the 15th day of March. Nevertheless, Spangler was charged with conspiracy "on or about the 15th day of March." The charge was not limited to only the 15th day of March. As a result, the trial court's statement did not constitute an acquittal of the conspiracy charge.

### A. *Additional or Different Crime*

Spangler maintains that the trial court should not have allowed the amendment under K.S.A. 2006 Supp. 22-3201(e) because it resulted in an additional or different crime being charged.

The prosecutor in this case conceded that the initial complaint failed to set forth a sufficient overt act in furtherance of the conspiracy. The overt act set forth in the initial complaint was manufacture of methamphetamine, a mere recitation of the crime that Spangler was alleged to have conspired to commit. In requesting the amendment of the complaint, the prosecutor stated that there needed to be more specific overt acts alleged in the complaint.

Under K.S.A. 2006 Supp. 21-3302(a), "[n]o person may be convicted of a conspiracy unless an overt act in furtherance of such conspiracy is alleged and proved to have been committed by such person or by a co-conspirator." Thus, "K.S.A. 21-3302(a) requires a charge of conspiracy to include an allegation of the overt act upon which such charge is based." *State v. Crockett*, 26 Kan. App. 2d 202, Syl. ¶ 3, 987 P.2d 1101 (1999). Because an overt act is an essential element of the crime of conspiracy, an allegation of conspiracy is fatally defective unless an overt act is charged. *State v.*

*Marino*, 34 Kan. App. 2d 857, 862, 126 P.3d 427, *rev. denied* 281 Kan. 1380 (2006).

In *Marino*, no overt act was alleged in the complaint. Nevertheless, the trial court later broadened or constructively amended the complaint by setting forth the specific overt acts in the jury instructions. This court held that the trial court's instruction allowed the jury to convict the defendant of an offense different from the offense alleged in the complaint. 34 Kan. App. 2d at 863.

Moreover, in *State v. Sweat*, 30 Kan. App. 2d 756, 48 P.3d 8, *rev. denied* 274 Kan. 1118 (2002), a defendant was convicted among other crimes of conspiracy to commit first-degree murder. The complaint read in pertinent part:

"[O]n or about the 23rd day of June, 2000, in said County of Reno and State of Kansas, one MICHELLE L. SWEAT then and there being, did then and there, unlawfully, FELONIOUSLY, and willfully: . . . commit an overt act towards the perpetration of the crime of Murder in the First Degree, to-wit: intentionally and with premeditation kill the person of Lloyd Eddens, who intended to commit said crime, but failed in the perpetration thereof or was prevented or intercepted in executing such crime.

". . . On or about the 23rd day of June, 2000, in said County of Reno and State of Kansas, one MICHELLE L. SWEAT then and there being, did then and there, unlawfully, FELONIOUSLY, and willfully: agree with another person, to-wit: Armando Fierro, to commit the crime or to assist in committing the crime of Murder in the First Degree, to-wit: intentionally and with premeditation kill Lloyd Eddens, in an overt act, and further such conspiracy was committed by such person or said co-conspirator." 30 Kan. App. 2d at 759.

In stating that the complaint did not even attempt to allege any specific overt act committed in furtherance of the conspiracy, the *Sweat* court stated: "It is not sufficient to say merely that the defendant willfully agreed with another person to commit the crime or to assist in committing the crime. Her [Michelle Sweat] conspiracy conviction must therefore be reversed." 30 Kan. App. 2d at 761. This is the problem with the State's initial complaint in this case. The complaint merely recited the crime that Spangler was alleged to have conspired to commit. Moreover, the prosecutor conceded that a sufficient overt act was not alleged in the initial complaint for the conspiracy charge.

Furthermore, the prosecutor was allowed not only to amend the conspiracy charge to allege specific overt acts of "the purchase of ephedrine pills, muriatic acid, lithium batteries, delivery of methamphetamine, and actual manufacture of methamphetamine," but also to change the name of the party who allegedly committed the overt acts. The amended complaint covering the conspiracy charge stated:

"That between the 4th day of October, 2004, and the 15th day of March, 2005, in Osage County, Kansas, VERONICA JEAN SPANGLER did unlawfully, feloniously and intentionally agree with another person, to-wit: Walter O'Handlen, Raymond Roberts, and Karen O'Handlen to commit the crime of manufacturing methamphetamine as defined by K.S.A. 65-4159 and an overt act in furtherance of the conspiracy was committed by Veronica Spangler, to-wit: purchase of ephedrine pills, muriatic acid, lithium batteries, delivery of methamphetamine, and actual manufacture of methamphetamine."

The original complaint stated that the overt act in furtherance of the conspiracy was committed by Raymond Roberts, Karen O'Handlen, and Walter O'Handlen. Nevertheless, the amended complaint stated that the overt act in furtherance of the conspiracy was committed by Spangler.

By changing the complaint to charge specific overt acts sufficient for the crime of conspiracy to manufacture methamphetamine and by changing the name of the party who allegedly committed the overt acts, the State was allowed to prosecute Spangler for an offense different from the offense alleged in the original complaint.

Further, by expanding the time period of the alleged criminal acts from a somewhat definite duration of on or about March 15th to a 6-month period, the State encompassed additional crimes of manufacturing methamphetamine in the conspiracy charge. At trial, Karen testified that they manufactured methamphetamine approximately once every 2 weeks. The initial charge of manufacturing methamphetamine on or about March 15th would encompass one or perhaps two manufactures. The amended charge of manufacturing methamphetamine would encompass approximately 12 or 13 manufactures. This changed the crime from conspiracy to manufacture methamphetamine on or about March 15th

to conspiracy to manufacture methamphetamine between October 4, 2004, and March 15, 2005.

*B. Prejudice*

Spangler further maintains that the amendment to the complaint at the end of the State's case prejudiced her defense under K.S.A. 2006 Supp. 22-3201(e) because it forced her to defend acts taking place months before the incident in question in the original complaint. Spangler argues that this late amendment blindsided the defense and prevented her from effectively defending the conspiracy charge.

Spangler's argument has merit. The State moved to amend the complaint just before it ended the presentation of its evidence at trial. Up to that point, it was obvious that part of defense counsel's strategy, based on his cross-examination of the State's witnesses, was to show that the State could not prove that Spangler had been involved in any part of the March 15th manufacture. By expanding the time period of the crime from on or about a particular date (March 15th) to a 6-month period, the State forced Spangler to change her defense. In the middle of trial, Spangler went from having to defend the manufacture of methamphetamine on or about March 15th to having to defend the manufacture of methamphetamine that occurred from October 4, 2004, to March 15, 2005. The expanded time period covered many more incidents of manufacturing methamphetamine than the initial charge. When the State amended the complaint, however, defense counsel had completed almost all of its cross-examination of the State's witnesses. At that point, defense counsel was stuck with his defense strategy as it pertained to the State's witnesses. Therefore, the State's amendment of the complaint prejudiced Spangler.

This prejudice was further compounded by the State's amendment of the complaint to charge specific overt acts by Spangler. In *Marino*, 34 Kan. App. 2d 857, Syl. ¶ 2, this court stated: "Because an overt act is an essential element of a conspiracy, a conspirator has the right to be informed of the overt act." The State gave Spangler notice of specific overt acts on which it was alleging to prove the conspiracy charge for the first time at the end of its

evidence at trial. Defense counsel had completed almost his entire cross-examination of the State's witnesses before he was made aware of the specific overt acts. At that point, he could not change his cross-examination to more adequately conform to the overt act element alleged in the amended complaint. Expanding the time period of the alleged criminal acts and changing the specific overt acts and the name of the party who allegedly committed those acts substantially prejudiced Spangler's defense.

As a result, we determine that Spangler was substantially prejudiced by the amendment of the complaint in the middle of trial. Accordingly, we reverse Spangler's conviction for conspiracy to manufacture methamphetamine.

## II. Sufficiency of Evidence

Next, Spangler argues that her convictions for manufacture of methamphetamine and conspiracy to manufacture methamphetamine were not supported by sufficient evidence. When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether, after reviewing all of the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

As an appellate court, we do not weigh conflicting evidence or pass on the credibility of witnesses. Further, we resolve all questions of credibility in favor of the State. *State v. Kuykendall*, 264 Kan. 647, 651, 957 P.2d 1112 (1998). The jury has the prerogative to determine the credibility of witnesses, the weight of the evidence, and any reasonable inferences that may be drawn from the evidence. *State v. Green*, 280 Kan. 758, 761, 127 P.3d 241 (2006). An appellate court looks only to the evidence that supports the verdict, and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. *State v. Adams*, 269 Kan. 681, 683-84, 8 P.3d 724 (2000).

### A. Manufacture of Methamphetamine

The State's theory at trial on the charge of manufacture of methamphetamine was that Spangler had aided and abetted Roberts,

Walter, and Karen in the manufacture of methamphetamine on or about March 15, 2005.

Aiding and abetting is not a separate crime in Kansas. Instead, it extends criminal liability to a person other than the principal actor. *State v. Parker*, 22 Kan. App. 2d 206, 207, 913 P.2d 1236, *rev. denied* 260 Kan. 1000 (1996). Under K.S.A. 21-3205(1), "[a] person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

To establish guilt under an aiding and abetting theory, the State was required to show that Spangler knowingly associated with the unlawful venture and participated in such a way as to indicate that she was facilitating the success of the venture. See *Green*, 280 Kan. at 761. "Without other incriminating evidence, mere presence in the vicinity of the crime or mere association with the principals that committed the crime is not sufficient to establish guilt as an aider and abettor. [Citation omitted.]" *Green*, 280 Kan. at 761-62.

Here, the evidence showed that Spangler had been participating in facilitating the success of the methamphetamine manufactures done by Roberts, Walter, and Karen. The State presented evidence that Spangler had purchased ingredients used in the manufacture of methamphetamine as late as the spring of 2005. Spangler and Roberts had a family plan where only one of them would be involved in the actual cook so if that person was arrested, the other one would be able to take care of the children. Spangler admitted that after the cook, Roberts would bring the methamphetamine back to their house where it would be cut. Spangler would then deliver a portion of it the following morning to Atchison as payment for the use of his land for the cook.

Moreover, the evidence establishes that on March 15, 2005, Spangler had contact with all three of the people who admitted to manufacturing methamphetamine on that date. Spangler dropped Roberts off at Atchison's house that afternoon. Spangler later stopped to help Walter and Karen who had run out of gas. Karen testified that Spangler bought gas for them and told them where Roberts was. According to Spangler, she drove to see Roberts and told him where Walter and Karen were. Based on Spangler's in-

volvement with the three principal actors on March 15, 2005, a jury could infer that Spangler knew about the manufacture taking place that day and that she was facilitating the success of the venture through her actions of helping Roberts, Walter, and Karen.

Spangler points out that the prosecutor speculated in closing argument at trial that she and Roberts had taken the mixture of pills and lithium to Atchison's house on March 15, 2005. Although Spangler maintains that there could be no reasonable inference that she and Roberts took the mixture to Atchison's house that day, the evidence presented at trial indicates otherwise. Spangler took Roberts to Atchison's house around 3:30 p.m. March 15, 2005. When Karen and Walter arrived at Atchison's home on the afternoon of March 15, 2005, the mixture of pills and lithium was already made. Roberts, Karen, and Walter had made arrangements to cook methamphetamine at Atchison's that day. Roberts was the person in charge of the cooks and would receive the majority of the methamphetamine produced. A reasonable inference from the evidence would be that Roberts and Spangler brought the mixture of pills and lithium to Atchison's when Spangler dropped off Roberts.

A review of the evidence in the light most favorable to the State leads to the conclusion that Spangler knowingly associated with the unlawful venture to manufacture methamphetamine and that she participated in such a way as to indicate that she was facilitating the success of the venture. See *Green*, 280 Kan. at 761. Accordingly, there was sufficient evidence for the jury to find beyond a reasonable doubt that Spangler aided and abetted in the manufacture of methamphetamine on or about March 15, 2005.

## B. Conspiracy to Manufacture Methamphetamine

In order for the jury to find Spangler guilty of conspiracy to manufacture methamphetamine, the State needed to prove the following elements: (1) that Spangler agreed with Roberts, Walter, and Karen to commit the crime of manufacture of methamphetamine; (2) that Spangler agreed with the intent that the crime of manufacture of methamphetamine be committed; (3) that the defendant acted in furtherance of the agreement by purchasing

ephedrine pills, muriatic acid, lithium batteries, delivery of methamphetamine, and the actual manufacture of methamphetamine; and (4) that this act occurred between October 4, 2004, and March 15, 2005, in Osage County, Kansas.

Spangler contends that her "general knowledge of past conspiracies" and her "after-the-fact involvement in those conspiracies does not constitute any evidence that she had entered into an agreement to manufacture on or about March 15, 2005." Spangler's conspiracy conviction, however, was based upon conspiracy to manufacture methamphetamine that occurred between October 4, 2004, and March 15, 2005.

Moreover, the State's evidence showed that Spangler had participated in more than an "after-the-fact involvement" of the manufacture of methamphetamine. Roberts, Karen, and Walter had been manufacturing methamphetamine every other week since at least October 2004. Spangler used methamphetamine daily and knew when Roberts was going to cook the methamphetamine. Roberts and Spangler had a family plan where only one of them would be involved in the actual cook. Karen's testimony revealed that Spangler would help buy the pills and batteries for the manufacturing process. Karen specifically testified about a shopping trip in Lawrence just before Christmas during which Spangler purchased pills and batteries. Additional evidence established that Spangler had repeatedly purchased muriatic acid in the spring of 2005. Once an actual cook was finished, Roberts brought the methamphetamine back to their home where he would cut it with other substances and package it. Karen would then deliver a portion of the methamphetamine to Atchison for the use of his property. Although Spangler was not at the actual cook, a jury could conclude that Spangler conspired with Roberts, Karen, and Walter and assisted with the manufacture of methamphetamine by purchasing ingredients and delivering methamphetamine as payment for the use of Atchison's land.

Based on the evidence, a jury could conclude beyond a reasonable doubt that Spangler was involved in a conspiracy to manufacture methamphetamine occurring between October 4, 2004, and March 15, 2005.

## III. *Sentencing*

Finally, Spangler contends that the trial court erred in sentencing her to drug severity level 1 felonies for her convictions of manufacture of methamphetamine and conspiracy to manufacture methamphetamine. Spangler argues that the crime of manufacture of methamphetamine under K.S.A. 2006 Supp. 65-4159 is identical to the crime of the use of drug paraphernalia with the intent to manufacture a controlled substance under K.S.A. 2006 Supp. 65-4152(a)(3). Therefore, Spangler maintains that the trial court should have sentenced her to a drug severity level 4 felony under K.S.A. 2006 Supp. 65-4152(a)(3) rather than a drug severity level 1 felony under K.S.A. 2006 Supp. 65-4159 for her convictions of manufacture of methamphetamine and conspiracy to manufacture methamphetamine.

It seems that Spangler did not raise this particular issue before the trial court. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Rojas*, 280 Kan. 931, 932, 127 P.3d 247 (2006). Nevertheless, K.S.A. 21-4721(e)(3) gives appellate courts the jurisdiction to review a claim that the sentencing court erred in ranking the crime severity level. See *State v. Fanning*, 281 Kan. 1176, 1178, 135 P.3d 1067 (2006).

Spangler's argument involves the interpretation of statutes. Interpretation of a statute presents a question of law over which an appellate court's review is unlimited. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

K.S.A. 2006 Supp. 65-4159(a) states that "[e]xcept as authorized by the uniform controlled substances act, it shall be unlawful for any person to manufacture any controlled substance or controlled substance analog." Methamphetamine is a controlled substance within the meaning of K.S.A. 2006 Supp. 65-4159(a). See K.S.A. 2006 Supp. 65-4150(a); K.S.A. 65-4107(d)(3).

K.S.A. 2006 Supp. 65-4152(a)(3) states that "[n]o person shall use or possess with intent to use . . . any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act."

In *State v. McAdam*, 277 Kan. 136, 144, 83 P.3d 161 (2004), our Supreme Court applied the rule from *State v. Nunn*, 244 Kan. 207, 229, 768 P.2d 268 (1989), that " '[w]here two criminal offenses have identical elements but are classified differently for purposes of imposing a penalty, a defendant convicted of either crime may be sentenced only under the lesser penalty provision,' " to determine that the offenses of manufacturing methamphetamine under K.S.A. 65-4159(a) and compounding methamphetamine under K.S.A. 65-4161(a) are identical. There, the defendant was sentenced for conspiracy to manufacture methamphetamine under K.S.A. 65-4159(a) as a drug severity level 1 felony. The defendant argued that he should have been sentenced under K.S.A. 65-4161(a), which proscribes compounding methamphetamine. Having determined that manufacturing methamphetamine is the same as compounding methamphetamine, our Supreme Court held that the statutes contained identical elements. Later, in *Fanning*, 281 Kan. 1176, our Supreme Court pointed out that the *McAdam* court, in determining whether K.S.A. 65-4159(a) and K.S.A. 65-4161(a) were identical, considered the elements of the statutes in relation to the facts of the case rather than just the statutory elements.

In *State v. Campbell*, 279 Kan. 1, 16, 106 P.3d 1129 (2005), our Supreme Court applied the analysis in *McAdam* to conclude that possession of drug paraphernalia with the intent to manufacture methamphetamine under K.S.A. 65-4152(a)(3) was identical to possession of ephedrine or pseudoephedrine with the intent to produce a controlled substance under K.S.A. 65-7006(a).

In *Fanning*, 281 Kan. 1176, Syl. ¶ 2, our Supreme Court held that a court must examine the underlying facts of a case in relation to the statutory elements of the offenses under consideration to determine whether the rule in *McAdam* should be applied to sentence a defendant to the lesser penalty. There, the defendant and his companions were stopped after officers discovered them leaving a store carrying several items used in the manufacture of methamphetamine. The officers found additional items to manufacture methamphetamine in their car. One of the companions admitted to officers that they were planning to use the products to manu-

facture methamphetamine. The defendant later pled no contest to attempted manufacture of methamphetamine, a severity level 1 felony under K.S.A. 65-4159(a) and K.S.A. 21-3301(a).

On appeal, the defendant in *Fanning* argued that he should be resentenced to a drug severity level 4 felony under K.S.A. 65-4152(a)(3) because that statute, which defines possession of drug paraphernalia with intent to manufacture, is identical to K.S.A. 65-4159. Our Supreme Court applied the statutory elements of each crime to the facts of the case and compared the two crimes. For the crime of attempted manufacture of methamphetamine, the State had to prove that Fanning: (1) possessed products used for manufacturing methamphetamine (the overt act); (2) possessed the products with the intent to manufacture methamphetamine; and (3) was prevented or intercepted in actually manufacturing methamphetamine. For the crime of possession of drug paraphernalia with the intent to manufacture methamphetamine, the State would have to prove that Fanning: (1) possessed products used for manufacturing methamphetamine; and (2) possessed the products with the intent to manufacture methamphetamine. Our Supreme Court determined that although the elements were nearly identical, attempted manufacture of methamphetamine required an additional element not found in possession of drug paraphernalia. Therefore, the two crimes were not identical under the rules applied in *McAdam* and *Campbell*, which required the elements proven to be exactly the same under each statute. 281 Kan. at 1182-83.

The defendant in *Fanning* also argued that the term "use" in K.S.A. 65-4152(a)(2) was equivalent to the term "manufacture" in K.S.A. 65-4159. Nevertheless, our Supreme Court determined that the record did not support the defendant's argument that he *used* drug paraphernalia to attempt to manufacture methamphetamine. The evidence merely established possession of drug paraphernalia. Limiting its analysis to *McAdam* and *Campbell* and the facts as supported by the record in relation to the statutory elements of the crimes, our Supreme Court held that the crime of attempted manufacture of methamphetamine was not identical to the crime of possession of drug paraphernalia with the intent to manufacture methamphetamine.

Spangler contends that applying the analysis in *Fanning* to the facts of this case, this court must determine that she should be resentenced as a severity level 4 offender under K.S.A. 2006 Supp. 65-4152(a)(3), which criminalizes the use of drug manufacturing paraphernalia with the intent to manufacture, for her crimes of manufacturing methamphetamine and conspiracy to manufacture methamphetamine.

### A. Conspiracy to Manufacture Methamphetamine

Because we are reversing Spangler's conviction for conspiracy to manufacture methamphetamine, it is unnecessary to address Spangler's argument on this sentencing issue. Nevertheless, we have looked at Spangler's argument and have determined that it is fatally flawed.

Based on the charges in the present case, in order to show that Spangler was involved in a conspiracy to manufacture methamphetamine, the State needed to prove the following elements:

1. That the defendant agreed with Roberts, Walter, and Karen to commit the crime of manufacture of methamphetamine;
2. That the defendant agreed with the intent to commit the crime of manufacture of methamphetamine; and
3. That the defendant acted in furtherance of the agreement by purchasing ephedrine pills, muriatic acid, lithium batteries, delivering methamphetamine, and actually manufacturing methamphetamine.

Applying the elements of the use of drug paraphernalia to manufacture methamphetamine under K.S.A. 2006 Supp. 65-4152(a)(3), we determine that the State would be required to prove the following elements:

1. That the defendant knowingly used drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell, or distribute methamphetamine. See PIK Crim. 3d 67.17(1)(c).

The charge of conspiracy to manufacture methamphetamine requires the proof of elements not required to prove the use of drug

paraphernalia to manufacture methamphetamine. Specifically, the conspiracy charge requires an agreement between the defendant and other individuals to manufacture methamphetamine. Moreover, based on the overt acts that were charged in the present case, the conspiracy charge required proof that the defendant delivered methamphetamine. Neither of these elements is found in use of drug paraphernalia to manufacture methamphetamine under K.S.A. 2006 Supp. 65-4152(a)(3). After considering the underlying facts in relation to the statutory elements of the crimes as required by *Fanning*, we determine that the crimes of conspiracy to manufacture methamphetamine under K.S.A. 2006 Supp. 65-4159 and K.S.A. 2006 Supp. 21-3302 and use of drug paraphernalia under K.S.A. 2006 Supp. 65-4152(a)(3) are not identical.

### B. Manufacture of Methamphetamine

An application of the statutory elements of manufacture of methamphetamine to the facts of this case results in the following elements that must be proved:

1. That the defendant *manufactured* a controlled substance known as methamphetamine;
2. That the defendant did so intentionally.

In this case, the State pursued an aiding and abetting theory for the charge of manufacturing methamphetamine. In *State v. Smolin*, 221 Kan. 149, Syl. ¶ 1, 557 P.2d 1241 (1976), our Supreme Court recognized that "[o]ne who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal."

As set forth above, an application of the elements of the use of drug paraphernalia to manufacture methamphetamine under K.S.A. 2006 Supp. 65-4152(a)(3) would require the State to prove the following elements:

1. That the defendant *knowingly used* drug paraphernalia *to* plant, propagate, cultivate, grow, harvest, *manufacture*, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell, or distribute methamphetamine. See PIK Crim. 3d 67.17(1)(c).

The elements of these two crimes seem identical. For the crime of manufacturing methamphetamine, the State must prove that the defendant intentionally manufactured methamphetamine. For the crime of use of drug paraphernalia to manufacture methamphetamine, the State must prove that the defendant knowingly used drug paraphernalia to manufacture methamphetamine. Although the use of drug paraphernalia language is absent from the crime of manufacturing methamphetamine, it is implicit in the manufacturing element of the crime. In order for a person to manufacture methamphetamine, he or she must use drug paraphernalia in the manufacturing process.

In this case, when Roberts, Walter, and Karen were arrested on March 15, 2005, methamphetamine and various items used to manufacture methamphetamine were discovered in Roberts' truck. Roberts, Walter, and Karen admitted that methamphetamine had been manufactured on Atchison's property on March 15, 2005. Describing the manufacturing process, Karen testified that she would get water, would help crush pills, and would observe the "gassing" process. Karen testified that she and Walter had purchased cold pills, batteries, and starter fluid that were used in the cook on March 15, 2005.

Based on the facts of this case, the elements of the charge of manufacture of methamphetamine resulted in the State proving that drug paraphernalia had been knowingly used to manufacture methamphetamine. Under these circumstances, the crime of manufacture of methamphetamine under K.S.A. 2006 Supp. 65-4159(a) includes conduct that is identical to the conduct included in use of drug paraphernalia to manufacture methamphetamine under K.S.A. 2006 Supp. 65-4152(a)(3). When considering the underlying facts in relation to the statutory elements as required by *Fanning*, we determine that the offenses are identical for sentencing purposes. In short, when two criminal offenses are the same for findings in relation to the statutory elements, they must be the same for purposes of sentencing.

Moreover, as a general rule, criminal statutes must be strictly construed in favor of the accused. Any reasonable doubt as to the meaning of the statute is decided in favor of the accused. Never-

theless, the rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. *State v. Snow*, 282 Kan. 323, 340-41, 144 P.3d 729 (2006). Based on the plain meaning of the wording of the statute, we must conclude that manufacture of methamphetamine under K.S.A. 2006 Supp. 65-4159(a) is identical to the use of drug paraphernalia with the intent to manufacture a controlled substance under K.S.A. 2006 Supp. 65-4152(a)(3) under the facts of this case. Accordingly, Spangler's sentence for manufacturing methamphetamine should be vacated, and she should be resentenced to a severity level 4 felony.

Convictions for manufacture and possession of methamphetamine and possession of drug manufacturing paraphernalia affirmed; conviction for conspiracy to manufacture methamphetamine reversed; sentence for manufacture of methamphetamine vacated; and case remanded for resentencing on the manufacture conviction as a severity level 4 felony.