NOT DESIGNATED FOR PUBLICATION

No. 112,001

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

REGINALD T. STAFFORD,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JAMES R. FLEETWOOD, judge. Opinion filed October 30, 2015. Affirmed.

*Michael P. Whalen* and *Krystle M. S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*:  Reginald T. Stafford sexually victimized a young girl, and a jury convicted him of rape and aggravated criminal sodomy. After the Kansas Supreme Court upheld his convictions and sentence, he filed a K.S.A. 60-1507 motion alleging that his trial counsel was ineffective and that his sentences constituted cruel and unusual punishment. The district court denied the motion, and Stafford now appeals arguing that he should have been provided an evidentiary hearing on the motion. Because the record provided adequate information to access his claims, we find a hearing was not necessary.

1

And because the court's factual findings are supported by substantial competent evidence and are sufficient to support the legal conclusions concerning Stafford's right to relief, we affirm the district court's denial of his motion. We also reject his claim that his sentences constitute cruel and unusual punishment.

FACTUAL AND PROCEDURAL HISTORY

This appeal stems from the district court's dismissal of Stafford's K.S.A. 60-1507 motion. Although they are not vital to understanding the issues in this appeal, a brief overview of the facts underlying his convictions are as follows:

In December 2006, 5-year-old S.W. informed her two older half-brothers that Stafford, who lived nearby, had touched her sexually. The half-brothers never repeated this statement, but at some point after S.W.'s initial report, another relative living in the apartment overheard one brother tell the other that S.W.'s mother had "'sold [her] for money.'" *State v. Stafford*, 296 Kan. 25, 32, 290 P.3d 562 (2012). That relative eventually told his employer, and his employer contacted the authorities. A few months after S.W. was removed from the home, her foster mother discovered her fondling herself. After some inquiry, S.W. disclosed that Stafford had sexually assaulted her on several occasions. She later told a social worker that Stafford gave her mother money in exchange for allowing him to touch her. The sexual assaults included rape and forcing S.W. to place her mouth on Stafford's genitalia.

Stafford and S.W.'s mother, Evelyn Wells, were tried jointly, and a jury convicted Stafford of two counts of rape and one count of aggravated criminal sodomy. The district court sentenced Stafford to three consecutive hard 25 sentences, one for each of the three convictions. On appeal, our Kansas Supreme Court upheld his convictions and sentence. 296 Kan. at 64.

2

In January 2014, Stafford filed a K.S.A. 60-1507 motion. There, Stafford attempted to collaterally attack his sentence in three ways. First, he raised a number of trial errors, claiming (1) that the complaint filed with the district court was fatally defective because it failed to allege his age, (2) that the district court acted improperly by allowing the State to amend the complaint during the trial, and (3) that the jury instructions failed to include his age as an element of the crime. Second, he argued that his trial counsel was ineffective for failing to call Wells to testify on his behalf. Third, he contended that his sentence constituted cruel and unusual punishment under both the United States and Kansas Constitutions. He also noted that he only raised the complaint and jury instruction issues in his K.S.A. 60-1507 motion because his appellate counsel neglected to raise those issues during his direct appeal.

Shortly before the preliminary hearing on the motion, Stafford's K.S.A. 60-1507 counsel completed a pretrial questionnaire for the district court. Although that questionnaire incorporated the motion by reference, counsel broke Stafford's arguments into two categories: (1) ineffective assistance of trial counsel for not objecting to the complaint or raising the issue of cruel and unusual punishment before the district court and (2) ineffective assistance of appellate counsel for not raising the complaint and jury instruction issues in Stafford's direct appeal.

The district court held a preliminary hearing on Stafford's motion and, based on the arguments and pleadings, determined that Stafford failed to allege any issues that required an evidentiary hearing or entitled him to relief. First, the district court found that Stafford was barred from raising the defective complaint, amended complaint, and jury instruction issues as they all constituted trial errors. The district court also found no error entitling Stafford to relief on any of those issues.

Next, the district court determined that trial counsel was not ineffective for failing to call Wells as a witness because Wells had exercised her right against self-incrimination

3

during the trial. The district court also reasoned that Stafford's argument on this issue was conclusory as he presented no proffer as to the content of Wells' testimony.

Third, and after a thorough discussion of the relevant caselaw, the district court rejected Stafford's cruel and unusual punishment claim. The district court instead reasoned that, based on precedent, Stafford's sentence neither "shock[ed] the conscience or offend[ed] fundamental notions of human dignity" nor was "'grossly disproportionate to his crimes.'"

Lastly, the district court dismissed Stafford's ineffective assistance of appellate counsel claim as untimely. Because Stafford failed to allege appellate counsel's ineffectiveness in his initial motion, the district court treated the issue's inclusion in the pretrial questionnaire like an amendment to the original motion. But because the issue of ineffective appellate counsel failed to relate back to the issues Stafford originally raised, the district court deemed the would-be amendment untimely. Moreover, the district court determined that Stafford suffered no prejudice from counsel's failure to raise these issues.

Stafford timely appealed.

ANALYSIS

On appeal, Stafford narrows his issues to the following: (1) ineffective assistance of appellate counsel as it relates to the complaint; (2) ineffective assistance of trial counsel for failing to call Wells; and (3) the cruel and unusual nature of his punishment. Stafford contends that each issue is substantial enough to require an evidentiary hearing on the merits.

A district court has three different options when handling a K.S.A. 60-1507 motion, and the standard of review depends upon which option a district court selects.

4

*Fischer v. State*, 296 Kan. 808, 822-23, 295 P.3d 560 (2013). Here, the district court held a preliminary hearing and denied the motion after determining that no substantial issue existed. See 296 Kan. at 822-23. When the district court uses this method, an appellate court applies a mixed standard of review, assuring that the court's factual findings are supported by substantial competent evidence and are sufficient to support the legal conclusions concerning the movant's right to relief. *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011).

Each of Stafford's three issues will be addressed separately.

*Ineffective assistance of appellate counsel*

In his original K.S.A. 60-1507 motion, Stafford raised issues concerning the initial complaint's defectiveness, the State's amendment to that complaint, and the jury instructions. Recognizing that these issues are trial errors generally addressed during a direct appeal, Stafford justified his failure to raise them earlier by noting that his appellate counsel neglected to include them in his direct appeal. Later, in a pretrial questionnaire, Stafford's K.S.A. 60-1507 counsel construed the trial error claims as alleging ineffective assistance of appellate counsel. But on appeal, Stafford places all of his eggs in the ineffective appellate counsel basket and argues that his initial K.S.A. 60-1507 motion adequately objected to appellate counsel's performance. The State responds by echoing the district court's ruling that the claim failed to relate back to Stafford's original motion.

Importantly, Stafford raises no argument about whether the claim relates back, only that he initially raised the issue. Stafford also fails to discuss the issue concerning jury instructions and instead focuses solely on the two issues relating to the complaint. Because he fails to address them on appeal, the relation-back and the jury instruction issues have been abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885,

5

889, 259 P.3d 676 (2011) (issues not briefed by the appellant are deemed waived and abandoned).

Turning now to the issue of ineffective assistance of appellate counsel, Stafford only references his appellate counsel once in his K.S.A. 60-1507 motion and only in connection with why he failed to raise certain arguments in earlier proceedings. When prompted by the form to "state concisely the reasons why [any ground for relief] has not previously been presented" to another court, Stafford answered "[f]ailure to raise by appellate counsel" for his three trial errors. Nothing in this brief answer indicates that appellate counsel acted ineffectively; rather, it simply explains why Stafford never previously pursued certain claims. This obviously led to the district court's conclusion that Stafford had not properly raised the issue of appellate counsel's effectiveness.

But even assuming that this fleeting reference served to properly raise the question of appellate counsel's effectiveness, no substantial issue requiring an evidentiary hearing exists. To establish ineffective assistance of appellate counsel, the defendant must first show, based on the totality of the circumstances, that counsel's performance fell below an objective standard of reasonableness. *Miller v. State*, 298 Kan. 921, 930-31, 318 P.3d 155 (2014). Second, the defendant must also show that, but for counsel's deficient performance, the appeal would have been successful. 298 Kan. at 934. Failure to raise an issue on appeal is not automatically ineffective assistance of counsel. *Laymon v. State*, 280 Kan. 430, 439-40, 122 P.3d 326 (2005).

A brief review of the record and relevant caselaw indicates that his two claims related to the complaint and its amendment would not have been successful on appeal. Stafford correctly observes that the initial complaint failed to allege his age. But that said, the district court is permitted to allow an amendment to a complaint "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." K.S.A. 22-3201(e). Here, the State amended the

6

complaint to include Stafford's age on the last day of trial. At that time, the complaint stopped being defective. It cannot fairly be said that appellate counsel's decision not to object to a corrected and nondefective complaint as defective was objectively unreasonable. See *Miller*, 298 Kan. at 930-31. And Stafford certainly suffered no prejudice in counsel's failure to raise the issue, as the complaint no longer qualified as defective at the time he appealed.

Similarly, an appellate challenge to the complaint's amendment would also have failed. Because a complaint may be amended at any time before the verdict, the decision to allow such an amendment is within the trial court's discretion. See *State v. Hayden*, 281 Kan. 112, 130, 130 P.3d 24 (2006). Once a trial commences, however, the amendment is only proper when the record demonstrates that the defendant's substantial rights were not prejudiced by the change. See *State v. Woods*, 250 Kan. 109, 113-15, 825 P.2d 514, *cert. denied* 506 U.S. 850 (1992). The question of prejudice is the determining factor when considering whether the amendment was proper. *State v. Spangler*, 38 Kan. App. 2d 817, 824, 173 P.3d 656 (2007).

In his motion, Stafford offered no explanation for how this late amendment prejudiced him. Instead, he argued that the amendment both charged a new crime and "completely surprised" him. But Stafford failed to explain how adding his age to the complaint changed the nature of the charge or caused him unfair surprise. To put it another way, Stafford's brief and conclusory argument fails to demonstrate that the amendment violated his substantial rights in such a way as to result in a successful appellate challenge.

In short, Stafford likely failed to properly raise ineffective assistance of appellate counsel as an issue in his K.S.A. 60-1507 motion. But even if we assume that he successfully raised the issue, he fails to demonstrate that his counsel's performance

prejudiced him. As such, the district court correctly found that no substantial issue existed.

*Ineffective assistance of trial counsel*

Next, Stafford argues that his trial counsel acted ineffectively by failing to investigate Wells and call her as a witness. To prevail on a claim of ineffective assistance of counsel, the defendant must establish two things. First, the defendant must demonstrate that counsel's performance was constitutionally deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution. Second, the defendant must establish that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *Miller*, 298 Kan. at 929.

Importantly, judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential, and the reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that the outcome of the proceeding would have been different but for counsel's deficient performance. *Miller*, 298 Kan. at 934.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any Criminal Case to be a witness against himself." U.S. Const., Amend. V. This same right is included in both our Kansas Constitution Bill of Rights and in K.S.A. 60-423(a). See Kan. Const. Bill of Rights, § 10 ("No person shall be a witness against himself."); K.S.A. 60-423(a) ("Every person has in any criminal action in which he or she is an accused a privilege not to be called as a witness and not to testify."). As such, each criminal defendant is privileged to testify on his or her own

8

behalf or to elect against testifying. See *Rock v. Arkansas*, 483 U.S. 44, 54, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).

In a case where two individuals are tried as codefendants, "each defendant has a separate absolute right not to be called as a witness." *State v. Nott*, 234 Kan. 34, 36, 669 P.2d 660 (1983). Unless waived, this right prevents one codefendant from calling the other as a witness. 234 Kan. at 36. Otherwise, the codefendant who wishes to call the other as a witness must seek to sever their trials and then call his or her former codefendant as an ordinary witness. 234 Kan. at 37. But even as an ordinary witness, the former codefendant could still then assert his or her privilege against self-incrimination. 234 Kan. at 37. In other words, one defendant cannot call his or her codefendant as a witness until that time when they are no longer codefendants—and even then, the former codefendant is not required to answer incriminating questions. 234 Kan. at 36-37.

On appeal, Stafford does not argue that his trial counsel should have moved to sever the trials and call Wells as an ordinary witness. Moreover, he offers no explanation as to why the decision to not call Wells—an individual who could not be compelled to testify and who in fact elected against testifying at trial—falls outside the broad range of reasonable professional assistance. But perhaps most importantly, Stafford provides no information concerning the contents of Wells' potential testimony or what his counsel might have discovered upon further investigation. Instead, he claims only that Wells' testimony would have "supported his defense that he was innocent." This conclusory statement fails to show the level of prejudice required to sustain a claim of ineffective assistance of counsel. See *Miller*, 298 Kan. at 934 (requiring that the defendant show a reasonable probability that the outcome of the proceeding would have been different).

In sum, Stafford failed to demonstrate either that his trial counsel acted ineffectively or that he suffered any prejudice from counsel's decisions. Counsel elected against calling Wells, who as a codefendant could not be compelled to testify, and

9

Stafford offers no insight as to the content or effect of her hypothetical testimony. As such, the district court properly determined that no substantial issue existed necessitating an evidentiary hearing.

*Cruel and unusual punishment*

Lastly, Stafford contends that the district court erred in finding that his sentence did not constitute cruel and unusual punishment. When, as here, a defendant raises a case-specific challenge to his sentence under the Eighth Amendment of the United States Constitution and § 9 of the Kansas Constitution Bill of Rights, this court reviews the district court's findings of fact and conclusions of law under a bifurcated standard. *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013). Specifically, this court—without reweighing the evidence—must review the factual findings under the substantial competent evidence standard while reviewing the legal conclusions drawn from those facts de novo. 296 Kan. at 981.

Whether a sentence is impermissible under the Kansas Constitution depends on whether that sentence is "'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.'" 296 Kan. at 982. In order to determine whether a lengthy sentence fits that description, courts use what is commonly referred to as the *Freeman* test. 296 Kan. at 982. This three-part test, named for *State v. Freeman*, 223 Kan. 362, 367, 574 P.2d 950 (1978), weighs the following factors:

> "(1) The nature of the offense and the character of the offender should be examined with particular regard to the degree of danger present to society; relevant to this inquiry are the facts of the crime, the violent or nonviolent nature of the offense, the extent of culpability for the injury resulting, and the penological purposes of the prescribed punishment;

"(2) A comparison of the punishment with punishments imposed in this jurisdiction for more serious offenses, and if among them are found more serious crimes punished less severely than the offense in question the challenged penalty is to that extent suspect; and

"(3) A comparison of the penalty with punishments in other jurisdictions for the same offense." 223 Kan. at 367.

Importantly, no single factor controls the outcome. *Seward*, 296 Kan. at 982.

Here, the district court entered into a lengthy analysis concerning whether Stafford's sentence was cruel and unusual. In order to better analyze those findings, each of the three *Freeman* factors will be addressed separately.

*The nature of the offense and the character of the offender*

As explained above, the first part of the *Freeman* analysis requires the district court to consider the nature of the offense and offender, including: the facts of the crime, the violence inherent in the offense, the culpability for the resulting injury, and the purposes of the punishment. 223 Kan. at 367. Here, the district court referred to the offense as "morally depraved" and focused on three specific elements of the case: (1) that Stafford paid to assault S.W.; (2) that Stafford repeatedly assaulted S.W. in a variety of ways; and (3) that Stafford's assaults caused S.W. to "act out sexually" even after the abuse ended. The district court also noted that Stafford's long prison sentence "protects society from [Stafford's] obvious inability to control his actions."

On appeal, Stafford raises two arguments as to why the district court's analysis falls short. First, he claims that the district court erred in concluding that his payments to Wells forced S.W. to engage in sexual acts. But a review of the record reveals that this argument is woefully unpersuasive. At trial, S.W. testified that her mother told her about

11

receiving money from Stafford for the assaults. In fact, S.W. actually saw her mother spend the money she received from her transactions with Stafford. S.W.'s case manager testified that S.W. reported that Wells took money from Stafford after he finished his assaults. One of S.W.'s relatives testified that he overheard S.W.'s half-brothers discussing the possibility that Wells sold S.W. to Stafford. And the nurse who examined S.W. for sexual assault also testified that S.W. reported that Wells "made [her] touch [Stafford]." Clearly, then, substantial competent evidence supports the district court's factual finding concerning his payments to Wells and their connection to his assaults on S.W.

Second, Stafford insists that, contrary to the district court's findings, the recidivism rate of sexual offenders is quite low. But Stafford never presented these issues or the studies he now cites to the district court, and this court cannot consider this new argument on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Moreover, and as noted by the district court, our Kansas Supreme Court in *Seward* specifically reiterated that the legislative purpose behind the child sexual offense sentencing scheme is "to remove perpetrators of sexual crimes against children from society." 296 Kan. at 986-87. And in another recent case, our Supreme Court relied on the United States Supreme Court when observing that "sex offenders represent a particularly serious threat in this country and . . . are more likely than any other type of offender to commit violent crimes following their release." *State v. Woodard*, 294 Kan. 717, 722, 280 P.3d 203 (2012). Based on this caselaw and also Stafford's failure to present any of these contentions to the district court, it cannot be said the district court erred in concluding that the purpose of the long prison sentence is to prevent Stafford from reoffending—especially when the district court also noted that Stafford sought to mitigate and downplay his crimes throughout the K.S.A. 60-1507 proceeding.

In short, the district court's factual findings are supported by the record. Additionally, and in light of *Seward* and other cases concerning the recidivism risks of

sexual offenders, the district court's legal conclusions are sound. The first *Freeman* factor therefore weighs against Stafford's argument.

*A comparison with more serious offenses*

The second *Freeman* factor requires a court to consider whether the punishment imposed for the offense in question is more severe than those for more serious offenses. 223 Kan. at 367. The district court relied on our Kansas caselaw and determined that the sentences imposed were not disproportionately harsh when compared to the punishments for other offenses.

On appeal, Stafford concedes that the weight of Kansas precedent is against him, as our Supreme Court in *Seward* and other cases established that the penalty for rape and aggravated incident liberties with a child are not disproportionately harsh when compared to other, more serious offenses in this jurisdiction. See 296 Kan. at 987-88 (discussing Jessica's Law penalties for aggravated incident liberties, aggravated criminal sodomy, and rape). However, Stafford argues that the Kansas Supreme Court "missed the point" in *Seward* and insists that the court decided the case incorrectly.

But this court is duty bound to follow our Supreme Court precedent, absent some indication that the court is departing from its previous position. *State v. Shaw*, 47 Kan. App. 2d 994, 1006, 281 P.3d 576 (2012), *rev. denied* 297 Kan. 1255 (2013). As there is no indication that our Supreme Court is abandoning its holding in *Seward*, this court must recognize it as controlling precedent and uphold the district court's decision.

*A comparison with punishments for the same offense in other jurisdictions*

The last portion of the *Freeman* test considers how the punishment at issue compares to the punishment for that same offense in other jurisdictions. 223 Kan. at 367.

13

Here, the district court again relied on Kansas caselaw to determine that other jurisdictions punish the same offense with equal or even harsher force. Stafford again concedes that *Seward* controls on this issue but also argues on appeal that the existence of the Kansas Sexually Violent Predator Act suggests that Kansas actually punishes these offenses more harshly by allowing for civil commitment of sex offenders.

But the civil commitment proceedings authorized under the Kansas Sexually Violent Predator Act "have been clearly held to be civil in nature, not criminal or punitive." *In re Care & Treatment of Hay*, 263 Kan. 822, Syl. ¶ 13, 953 P.2d 666 (1998). In fact, commitment under this act "is not punishment for any offense, but merely civil commitment based on [a] mental condition." 263 Kan. at 834. As such, an individual's civil commitment is entirely independent of his or her criminal case. See 263 Kan. at 834.

In recent history, our Kansas Supreme Court considered and rejected the argument that civil commitment is a punishment that must be considered as part of the second *Freeman* factor. See *State v. Mondragon*, 289 Kan. 1158, 1164-65, 220 P.3d 369 (2009). Stafford offers no explanation for why the civil commitment proceeding should be treated differently in the context of *Freeman*'s final factor.

Because any civil commitment proceedings that might follow Stafford's sentence are not criminal, they are not part of the punishment he received for his offenses. Therefore, the Kansas Sexually Violent Predator Act is immaterial when comparing his punishment to those for the same offense in other jurisdictions. See *Freeman*, 223 Kan. at 367. The district court's conclusion concerning this factor is therefore also sound.

To conclude the *Freeman* analysis, then, the district court reviewed the facts of Stafford's case and determined that he repeatedly and violently assaulted a young girl in exchange for money and that his punishment served the purpose of preventing him from reoffending. Based on Kansas caselaw, the district court also concluded that his

14

punishment was not disproportionate when compared to other crimes. Review of this decision clearly demonstrates that the district court's factual findings were supported by the record and the legal conclusions supported by those facts and caselaw. The district court did not err in finding that Stafford's punishment was not cruel and unusual under our Kansas Constitution and denying his K.S.A. 60-1507 motion.

Turning finally to the constitutionality of Stafford's sentence under the United States Constitution, our Kansas Supreme Court has previously held that the *Freeman* analysis "'applies with equal force' to a case-specific Eighth Amendment challenge." *Seward*, 296 Kan. at 990. On appeal, Stafford provides no additional analysis or argument concerning his Eighth Amendment challenge but simply rests on his arguments under *Freeman*. But as previously explained, Stafford's punishment is not grossly disproportionate under *Freeman*.

*Seward*, a case involving similar facts and where our Supreme Court found the sentence constitutionally permissible, is instructive on this point. Like in that case, Stafford repeatedly victimized a young girl, although S.W. was younger than the victim in *Seward*. See 296 Kan. at 980. He committed similarly "substantially . . . invasive" sexual assaults as the defendant there: rape and aggravated criminal sodomy. 296 Kan. at 991. In fact, the actual types of assault—including forcing the victim to place her mouth on the defendant's genitalia—are strikingly similar. See 296 Kan. at 980-81. And although Stafford lacked the position of trust held by the defendant in *Seward*, he paid money to assault S.W. See 296 Kan. at 980 (victim was defendant's stepdaughter). In other words, *Seward* and the instant case are factually similar enough that the district court correctly applied the rationale in *Seward* when denying Stafford's K.S.A. 60-1507 motion.

In sum, Stafford raised no substantial issues concerning the constitutionality of his sentences. Substantial competent evidence supports the district court's factual findings on

the *Freeman* analysis, and the district court's legal conclusions are sound. Moreover, Stafford's sentence is not grossly disproportionate from an Eighth Amendment perspective. The district court's decision to deny the motion without an evidentiary hearing is affirmed.

Affirmed.