(78 P.3d 1196)

No. 89,548

STATE OF KANSAS, *Appellee,* v. SNOW K. VINYARD, *Appellant.*

Opinion filed November 14, 2003.

*Korey A. Kaul,* assistant appellate defender, for appellant.

*Boyd K. Isherwood,* assistant district attorney, *Nola Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., ELLIOTT and MARQUARDT, JJ.

MARQUARDT, J.: Snow K. Vinyard appeals her convictions for aggravated burglary and theft. We affirm.

On August 12, 2001, a security officer at Dillard's department store recognized Vinyard as she walked toward the store entrance from the mall. Vinyard had been caught shoplifting at the store on previous occasions. The officer used the security camera to follow Vinyard's movements. Vinyard's male companion picked up a CD player and walked with Vinyard to the children's department. Vinyard stopped in front of a children's sunglasses display. Then Vinyard and her companion met behind a clothing display and Vinyard opened an empty Dillard's shopping bag as her companion placed the CD player inside the bag.

The security officer observed Vinyard and her companion walk out of Dillard's into the mall without paying for the CD player. Vinyard and her companion were arrested by two security officers after they left the store. In addition to the CD player, the officers discovered five pairs of children's sunglasses in Vinyard's purse, with the price tags still affixed and no proof of purchase. The total value of the six items was approximately $185.

At trial, the manager of Dillard's testified that Vinyard had been banned from returning to the store after she was caught shoplifting merchandise on previous occasions. The State presented a summary of Vinyard's history of shoplifting at Dillard's, which included four prior arrests and prosecutions. Each time Vinyard was caught stealing from Dillard's, she signed a document acknowledging that she had been told she was banned from returning to the store. Vinyard objected to the introduction of the prior crimes evidence.

Vinyard presented no evidence and the jury found her guilty of one count of aggravated burglary, a severity level 5 felony, and one count of theft, a class A, nonperson misdemeanor.

The trial court granted Vinyard's motion for a downward dispositional departure and sentenced her to 36 months' probation with an underlying prison term of 51 months. Vinyard timely appeals.

### *Aggravated Burglary*

Vinyard argues that there was insufficient evidence to convict her of aggravated burglary because walking from the mall into Dillard's does not constitute "entering a building" as required by K.S.A. 21-3716.

K.S.A. 21-3716 describes aggravated burglary as: "knowingly and without authority entering into or remaining within any building, manufactured home, mobile home, tent or other structure, or any motor vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property in which there is a human being, with intent to commit a felony, theft or sexual battery therein."

Vinyard cites *State v. Hall*, 27 Kan. App. 2d 313, 3 P.3d 582, *aff'd* 270 Kan. 194, 14 P.3d 404 (2000) as support for her argument. Hall was videotaped taking items from the stockroom of a K-Mart store which was located at the back of the store. Customers did not have authority to enter the stockroom, and Hall had to walk through two closed doors to gain access to the room. He was convicted of three burglary charges. In Hall's appeal, he argued that he could not be convicted of burglary because he entered the store with the consent of K-Mart, and the stockroom was not a separate entity or building under the burglary statute. The Court of Appeals stated:

"Hall may have been guilty of several criminal offenses, but one of them was not burglary. He did not enter the K-Mart building which housed the storeroom without authority. His conviction of burglary must be reversed." 27 Kan. App. 2d at 319.

The Kansas Supreme Court reviewed the *Hall* decision and agreed that Hall clearly intended to commit a theft when he entered the stockroom, but that penal statutes were to be construed in favor of the defendant, "subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." 270 Kan. at 202.

Vinyard interprets *Hall* to stand "for the proposition that, for purposes of burglary, the element of entering refers to the building or structure and not an internal demarcation." Vinyard argues that when she entered the mall she had authority to do so, and that defining Dillard's as a separate building for the purposes of an aggravated burglary conviction violates *Hall.*

The State counters that Vinyard's interpretation of *Hall* would lead to an unreasonable result because the application of the statute would depend on whether Vinyard had entered Dillard's from the exterior doors, rather than the mall entrance.

The interpretation of a statute is a question of law, granting this court unlimited review. An appellate court is not bound by a trial court's statutory interpretation. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

*Hall* is distinguishable from the instant case. Hall was allowed to enter K-Mart and stayed within that store. Even though Vinyard was allowed in the public mall, she entered Dillard's without authority. There are various stores within the mall that are leased by the mall owners. These stores are separate businesses and have their own entrances. Each store is completely enclosed and secured separate and distinct from the other businesses in the mall.

Interpreting the law as suggested by Vinyard is unreasonable. If Vinyard had chosen to enter Dillard's from the exterior doors to the building, she would have entered without authority. It makes no difference that she entered from the mall entrance.

There is no Kansas case directly on point; however, *Smith v. State*, 632 So. 2d 136 (Fla. Dist. App. 1994), appears to be instructive. That court held that Smith could be charged with and prosecuted for 18 counts of burglary of a structure where he entered 17 separate business that were wholly contained under a mall's single roof. The court stated that the businesses were each completely enclosed and secured separate and distinct from other businesses, were occupied by distinct lessors, and were separate and distinct from the common area of the mall. 632 So. 2d at 137.

We find that when an individual enters a business that is completely enclosed and secured separate and distinct from the other businesses in a public mall, the individual is entering a building as

described in K.S.A. 21-3716. Using the analysis of *Smith,* we agree that Vinyard is guilty of aggravated burglary.

### Aggravated Burglary Instruction

Vinyard argues that the aggravated burglary instruction was clearly erroneous because the statute does not cover situations in which a person enters a part of a building. She also states that "[t]his instruction undoubtedly misled the jury because the trial court did not define or specify the building that was entered into without authority."

The trial court gave the following aggravated burglary instruction:

"The defendant is charged in count one with the crime of aggravated burglary. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:
1. That the defendant knowingly entered a building;
2. That the defendant did so without authority;
3. That the defendant did so with the intent to commit a theft therein;
4. That at the time there was a human being in the building, and
5. That this act occurred on or about the 12th day of August, 2001, in Sedgwick County, Kansas."

Vinyard did not object to this instruction at trial. No party may assign as error the giving or failure to give an instruction unless he or she objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he or she objects and the grounds of his or her objection unless the instruction is clearly erroneous. *Hawkinson v. Bennett,* 265 Kan. 564, 581, 962 P.2d 445 (1998). Instructions are clearly erroneous only if the reviewing court is firmly convinced that there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. *State v. Evans,* 270 Kan. 585, 588, 17 P.3d 340 (2001).

Under these circumstances, the instruction was not clearly erroneous because it correctly stated the law in relation to the facts of this case.

### Failure to Give a Unanimity Instruction

Vinyard next argues that she was entitled to a unanimity instruction because a jury could have found her guilty of taking either the

CD player or the five pairs of sunglasses. Vinyard believes that the instructions do not properly and fairly state the law as applied to the facts of this case.

In *State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001), the Kansas Supreme Court described the harmless error analysis for multiple acts and whether a unanimity instruction should have been given. The Kansas Supreme Court held that the trial court must determine whether there is a possibility of jury confusion, or if the evidence showed either legally or factually separate incidents. The court stated:

"Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts." 271 Kan. at 939.

There was no possibility of juror confusion in Vinyard's case, nor did the act of taking the sunglasses and CD player involve legally or factually separate incidents. Either the jury believed that Vinyard had taken all of the merchandise, or it believed she was innocent of the charges. The trial court did not err when it did not give the jury a unanimity instruction.

### Evidence of Prior Crimes

Vinyard's final argument is that the trial court erred when it admitted into evidence her prior theft convictions for shoplifting at Dillard's and her subsequent ban on entering any of its stores.

K.S.A. 60-455 states:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In *State v. Lane*, 262 Kan. 373, 940 P.2d 422 (1997), the Kansas Supreme Court succinctly described the standard of review for the admission of evidence pursuant to K.S.A. 60-455:

"There are three requirements which must be satisfied for evidence to be admitted under K.S.A 60-455. The district court must find that (1) the evidence is relevant to prove one of the facts specified in the statute; (2) the fact is a disputed, material fact; and (3) probative value of the evidence outweighs its potential prejudice. [Citation omitted.] If the requirements for admission of evidence of prior crimes pursuant to K.S.A. 60-455 are met, the scope of appellate review is limited to whether the trial court abused its discretion. [Citation omitted.] Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. [Citation omitted.]" 262 Kan. at 388.

Before trial, the State filed a motion pursuant to K.S.A. 60-455 to introduce Vinyard's prior crimes evidence. The State argued that the prior crimes evidence should be admitted because the State "anticipated that the defense will argue that the Defendant had authority to enter the store due to the public nature of department stores and that she did not intend to steal merchandise belonging to Dillard's." At the hearing on the introduction of K.S.A. 60-455 evidence, the State argued that the evidence should be allowed to prove the intent element of the aggravated burglary charge. The State did not argue that intent was a disputed material fact, only that the prior crimes evidence would help to prove the intent element of the crime. The trial court allowed the introduction of the evidence because of the factual similarity between the prior crimes and the crime at issue, because the evidence was relevant to the issue of intent, and because the probative value outweighed the potential for prejudice to Vinyard.

It is apparent from the record on appeal that Vinyard made no attempt to challenge the intent element of the charge. Instead, Vinyard argued in her motion to dismiss that Dillard's had allowed her into the store and had thereby waived the authority element of the charge, and the circumstances of her case were not covered by the aggravated burglary statute. At trial, Vinyard's theory of defense echoed the arguments raised in her motion to dismiss. At

no time did Vinyard argue that there was an innocent explanation for her behavior on August 12, 2001.

The erroneous admission of evidence of a prior crime under one K.S.A. 60-455 exception does not render the admission harmless merely by the fact it would have been admissible under another exception. *State v. McCorgary*, 224 Kan. 677, 686, 585 P.2d 1024 (1978).

Even though Vinyard's prior crimes evidence was erroneously admitted, where the evidence of guilt is direct, overwhelming, and could not have affected the result of the trial, such admission is harmless. See *State v. Jamison*, 269 Kan. 564, 570, 7 P.3d 1204 (2000). In light of the weight of the evidence against Vinyard, the trial court's admittance of Vinyard's prior crimes evidence was harmless error.

Affirmed.

ELLIOTT, J., dissenting: I dissent. Frankly, I cannot fault the realism and pragmatism of the majority opinion. But neither can I ignore the language of our burglary statute and the language and teaching of *State v. Hall*, 27 Kan. App. 2d 313, 3 P.3d 582, *aff'd* 270 Kan. 194, 14 P.3d 404 (2000).

In *Hall*, there was a building—K-Mart. In that building there was a subunit—a storeroom. Defendant entered the *building* with the implied permission of the owner. When defendant chose to steal property from the *subunit*, an essential element of burglary was missing. Hall may have been guilty of several crimes, "but one of them was not burglary." 27 Kan. App. 2d at 319. In his concurring opinion, then Chief Judge Brazil urged the legislature to "consider revising the burglary statute to bring it into line with modern realities." 27 Kan. App. 2d at 319 (Brazil, J., concurring).

That was over 3 years ago. Thus far, the legislature has chosen not to change the language of K.S.A. 21-3715 (or K.S.A. 21-3716).

In affirming *Hall*, Justice Lockett quoted with approval the following from 27 Kan. App. 2d at 318-19:

" 'A broad construction of K.S.A. 21-3715 would blur the line between burglary and crimes such as shoplifting and criminal trespass. We are not free to adapt the statute defining burglary by construing it to fit a set of facts presented to us. The

facts must support the crime as it is defined by the legislature. If the statute is to be changed, it must be changed by the legislature, not the courts.' 27 Kan. App. 2d at 318-19." 270 Kan. at 202.

In the present case, we have a building—a mall. In that building, there is a subunit—Dillards. Defendant entered the building, the mall, by the public entrance and, therefore, entered the *building* with the implied permission of the building's owner. Accordingly, when defendant chose to steal property from the subunit, an essential element of burglary, as currently defined, was missing.

Further, in affirming *Hall*, the Supreme Court clearly discussed the problem with the current statute and gave the legislature citations to numerous examples from other states of how the statute might be amended. See 270 Kan. at 198-200.

Since the legislature has not responded to the *Hall* decision, that indicates to me the legislature is comfortable with *Hall's* holdings.

It is for the legislature, not the courts, to clarify the conceptual definition of "building" to bring it into line with modern realities.

I would reverse.