NOT DESIGNATED FOR PUBLICATION

No. 113,883

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES LEE FOSTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed August 26, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*R. Douglas Sebelius*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., PIERRON and MCANANY, JJ.

*Per Curiam*:  A jury convicted James Lee Foster of burglary of a dwelling and theft for stealing two laptops from Terry Shrader's rented room in a house. Foster appeals his convictions on three grounds.

First, Foster argues the State failed to establish probable cause at the preliminary hearing that he had entered Shrader's room without authority because he had permission to enter the house generally. Second, Foster asserts there was insufficient evidence that

1

he lacked the authority to enter Shrader's room or that he intended to steal something when he entered Shrader's room. Third, Foster contends the district court abused its discretion by allowing the State to amend the charging document during trial to cover 2 additional days. We affirm.

Terry Shrader rented a small room in Virginia Lentz' house. On April 18, 2014, he called police to report that his room had been broken into and his Dell laptop was missing. Because it was Easter weekend and Shrader was going to visit his family, police did not meet with him at the house until April 20, 2014. By then, Shrader had discovered that his HP laptop was missing. He believed it had been in the room when he reported the Dell laptop stolen on April 18.

Shrader's room was on the second floor of Lentz' house. It had a folding, accordion-style wooden door, like a closet might have. Shrader had attached a piece of wood to the door frame and some hook-and-eye latches to the door and the piece of wood. He claimed he had used a padlock to secure the door before leaving for work on the April 18. When he returned later that day, he noticed the piece of wood had been moved and nailed in a lower position. He discovered that his bed had been flipped over and clothes and trash had been scattered around the room. Shrader said he had straightened his bed and put the padlock back on before leaving town. When Officer Larry Land examined the room on April 20, he saw a bent nail on the floor that Shrader told him had come out of the piece of wood attached to the door frame. Officer Land did not see a padlock but thought it was possible that a padlock could have been used on the door.

Lentz is the mother of Christina League, who was engaged to Foster at the time of the trial. At one time, Foster had lived in Lentz' house while Shrader was living there, but by the time of the events in this case, he had moved to Christina's house down the street. Lentz often had Foster and Christina fix things around her house. Lentz told Officer Land

2

that Christina and Foster had her permission to enter the house at any time and each had a key. Lentz told Officer Land she had asked Foster and Christina to fix the electricity in Shrader's room a couple of months before they entered his room on April 18. In a written statement, Lentz said she had given Foster and Christina permission to enter Shrader's room, but Shrader would not let them in and had falsely claimed the problem had been fixed.

Christina and Foster told Officer Land they had entered Shrader's room to fix an electrical issue and took a few items that belonged to them, including a dreamcatcher, a DVD, and some Zippo lighters. Christina and Foster initially told Land they had not taken any laptop computers. They claimed Shrader had given Foster the Dell laptop. Christina later testified at trial that they were at Lentz' house to get Foster's belongings and saw sparks flying from the outlet through Shrader's open door, which prompted them to enter the room.

Landon League, Christina's son and a former high-school classmate of Shrader's, told police he had seen his mother and Foster carry two laptops away from Lentz' house around the time that Shrader's laptops went missing. Landon took a Dell laptop from the home he shared with his mother and Foster and showed it to Shrader, who identified it as his computer. They turned the laptop over to Officer Land, who was later able to confirm that the serial number on the computer matched the information provided by Shrader's father.

Shortly before trial in December 2014, Christina contacted police and told them she and Foster had returned to Lentz' house one or two days after the Dell laptop was reported missing on April 18. She said Foster had gone upstairs to get some of his things while she stayed downstairs and he had returned with an HP laptop. She claimed she had seen Foster take the laptop apart to use for parts in his other laptop and thought he had thrown the rest away in a dumpster. She was granted immunity from prosecution for

3

testifying for the State. She claimed at trial that she only reported the incident because she had been threatened by an anonymous caller that she believed to be Shrader's father.

The State charged Foster with burglary of a dwelling and theft which allegedly occurred on or about April 18, 2014. The district magistrate held a preliminary hearing on August 13-14, 2014, and found probable cause to bind Foster over on the charges and proceed to trial. Foster challenged the decision by filing a motion to dismiss with the district court; but after reviewing the preliminary hearing transcript, the court denied the motion.

Two days before trial, on January 20, 2015, the State sought to amend the charging document to allege that the burglary and theft "occurred on or between April 18, 2014, and April 20, 2014." At the beginning of the trial on January 22, 2015, the district court decided it would defer ruling on the motion until the State had finished presenting evidence at trial. At the close of the State's evidence, the court granted the motion to amend the charging document to reflect the expanded time frame.

The jury found Foster guilty of burglary and theft. The district court sentenced Foster to an underlying prison term of 12 months for burglary and placed him on 24 months' probation. For the theft conviction, the court sentenced Foster to 12 months in jail to run concurrent with the burglary charge and granted probation on that count as well.

Foster appeals his convictions.

Foster argues the district court wrongly concluded after the preliminary hearing that the State had established probable cause to believe he had committed burglary. In particular, he contends the evidence presented at the preliminary hearing did not establish one of the key elements of burglary—that Foster entered the dwelling without

4

authorization. He claims he had Lentz' permission to enter and be in the house and did not need separate authorization to enter Shrader's room, or, alternatively, that Kansas landlord-tenant law authorized him to enter Shrader's room to make an emergency repair.

Under K.S.A. 2015 Supp. 22-2902(1), every person charged with a felony has the right to a preliminary examination, commonly called a preliminary hearing, unless the person was charged after being indicted by a grand jury. See also K.S.A. 2015 Supp. 22-2202(p) (defining preliminary examination). At the hearing, a magistrate or district court judge will hear the State's evidence and determine (1) whether a crime has been committed and (2) whether there is probable cause to believe that the defendant committed the crime. *State v. Washington*, 293 Kan. 732, 733, 268 P.3d 475 (2012); see K.S.A. 2015 Supp. 22-2902(3)-(5). Probable cause at the preliminary hearing means "'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" 293 Kan. at 734 (quoting *State v. Berg*, 270 Kan. 237, 238, 13 P.3d 914 [2000]). If the court determines there is probable cause, then the case may proceed and the defendant will be bound over for trial; if not, the magistrate will dismiss the charges and release the defendant. K.S.A. 2015 Supp. 22-2902(3).

In determining whether there is probable cause, the district court must draw inferences from the evidence in favor of the State and should not consider whether there is sufficient evidence to support a conviction. *Washington*, 293 Kan. at 734; *State v. Anderson*, 270 Kan. 68, 71, 12 P.3d 883 (2000). The court must also consider the defendant's defense and evaluate the credibility of the State's and the defendant's witnesses. If there are any conflicts in witness testimony, the court must accept the version of the testimony that is most favorable to the State. *State v. Bell*, 268 Kan. 764, 764-65, 1 P.3d 325 (2000); *State v. Bell*, 259 Kan. 131, 133, 910 P.2d 205 (1996). For the defendant to be bound over for trial, the preliminary hearing judge must find probable cause that each element of the crime existed and could be proven at trial. See *State v.*

5

*Huser*, 265 Kan. 228, 232, 959 P.2d 908 (1998); but see *State v. Beaver*, 41 Kan. App. 2d 124, 127-28, 200 P.3d 490 (2009) (concluding probable cause at preliminary hearing does not require evidence of every element of a crime based on Kansas Supreme Court case discussing probable cause to arrest). Even if the evidence is weak, if some evidence tends to show that the defendant committed the charged crime, the case should go to the jury. *State v. Brown*, 299 Kan. 1021, 1030-31, 327 P.3d 1002 (2014).

In order to preserve a challenge to a district court's finding of probable cause at the preliminary hearing, the defendant must file a motion to dismiss before the district court, which Foster did. See *Washington*, 293 Kan. at 734. An appellate court reviews the district court's probable-cause finding independently, with no required deference to the district court's conclusion. 293 Kan. at 734. Additionally, the court applies the same standards of review and evidence as the magistrate does at the preliminary hearing. *State v. Fredrick*, 292 Kan. 169, 171, 251 P.3d 48 (2011).

In order to show there was probable cause to believe that Foster committed the burglary as charged, the State had to present some evidence of each element of burglary—that is that Foster: (1) entered into or remained in, (2) a dwelling, (3) without authority, and (4) with the intent to commit a theft. See K.S.A. 2013 Supp. 21-5807(a)(1). On appeal, Foster contends the State failed to establish Foster entered the dwelling without authority and, therefore, the district court erred in finding probable cause that Foster committed a burglary.

Foster first argues that because he had permission and authority to enter Lentz' house, he could not have committed burglary when he entered Shrader's room, which was merely a portion of Lentz' house and not a separate dwelling for purposes of the burglary statute. He cites *State v. Hall*, 270 Kan. 194, 14 P.3d 404 (2000), in support of his argument. Hall was convicted of burglary after he entered a K-Mart store and stole merchandise from the storeroom. He appealed, arguing the State had not proven he had

entered the store without authority because the store was open to the public. The State claimed that even though Hall had authority to enter the store, he did not have authority to enter the storeroom and had, therefore, committed burglary when he did so with the intent to commit a theft. The Kansas Supreme Court overturned Hall's convictions, concluding he had not committed burglary because the storeroom was merely a portion of the building, not a separate structure, and he had authority to enter the building. In so holding, the court noted that, unlike other states' burglary statutes, the Kansas statute did not distinguish between a building and its subparts or public and nonpublic portions and it was required to construe criminal statutes in favor of the defendant. 270 Kan. at 198-202.

In finding that Shrader's room constituted a separate dwelling that could be burglarized, the district court relied on *State v. Parker*, 48 Kan. App. 2d 68, 282 P.3d 643 (2012), *rev. denied* 297 Kan. 1254 (2013). The State, likewise, contends *Parker* should control in this case. The *Parker* court determined that a hospital room occupied by a patient constituted a structure for the purpose of an aggravated burglary charge. 48 Kan. App. 2d 68, Syl. ¶ 6. (Aggravated burglary has the same basic elements as burglary but also requires that a person is present in the structure. See K.S.A. 2015 Supp. 21-5807[b].) Parker relied on *Hall* to assert that because the hospital was open to the public, he could not have been convicted of aggravated burglary for entering a patient's room to sexually assault her. In determining that *Hall* was distinguishable, the *Parker* court noted that the hospital room had a door, was temporarily "leased" to the patient, was designed to exclude others, and was intended to protect the patient's privacy and security. 48 Kan. App. 2d at 84-85 (drawing on other Court of Appeals' decisions finding that a tanning booth and a store in the mall could be burglarized).

This case is more analogous to *Parker* than to *Hall*. Shrader testified he had been renting the room from Lentz. Lentz told Officer Land that Shrader was renting a room from her, although he was behind on his payments. But at the preliminary hearing, Lentz

7

testified Shrader was not paying rent, electricity, or for food and she allowed him to stay there because he was her son's friend. Shrader had installed the makeshift folding door and had on one occasion told Lentz he did not want people entering his room when he was not there or had not given them permission. Viewing the evidence in the light most favorable to the prosecution, the room had a door, was leased to Shrader, was designed to exclude others, and was intended to protect Shrader's privacy and security. Under Shrader's room was a separate dwelling that could be burglarized.

Foster contends *Parker* "abandoned Kansas Supreme Court precedent in favor of Court of Appeals precedent." He asserts the *Parker* court disregarded the burglary statute's plain language that does not distinguish between a structure and its subparts as discussed in *Hall* and did not discuss why leased subparts of a structure deserve different legal treatment.

In *Hall*, the same owner controlled the public and nonpublic portions of the building, but the situation changes when different parties have control over the subparts of the building. In *State v. Vinyard*, 32 Kan. App. 2d 39, 78 P.3d 1196 (2003), *rev. denied* 277 Kan. 927 (2004), the court distinguished *Hall* and concluded the defendant committed burglary when she entered a Dillard's store in a mall to steal some merchandise. The defendant had been banned from entering that store but not the mall. The *Vinyard* court noted the stores in the mall were leased to different tenants and each store was "completely enclosed and secured separate and distinct from the other businesses in the mall," unlike the situation in *Hall*. The court concluded the stores in the mall were distinct structures for purposes of aggravated burglary charges. 32 Kan. App. 2d at 42-43. This rationale should extend to Shrader's rented room in Lentz' house, as it was also completely enclosed and secured separately from the common areas of the house.

8

The *Hall* court noted that it must construe criminal statutes in favor of the defendant "subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." 270 Kan. at 202. Under Foster's interpretation, a tenant in one unit in an apartment complex would not commit burglary if he or she were to break into another unit to steal something simply because he or she would be authorized to enter the common space. This is not a logical or reasonable interpretation. Leased portions of a building that are separately enclosed and secured are to be treated as separate structures for burglary purposes.

Foster additionally argues he had authority to enter Shrader's room under Kansas landlord-tenant law. Under K.S.A. 58-2557, a landlord has the right to enter a dwelling unit with a maintenance worker after "reasonable notice to the tenant" or may enter without notice or consent of the tenant "in case of an extreme hazard involving the potential loss of life or severe property damage." Foster contends Lentz had given him permission to enter Shrader's room to fix the electrical problems or that an emergency repair justified entering the room. Thus, according to Foster, even if we determine Shrader's room constituted a separate dwelling, he was still authorized to enter Shrader's room to make repairs.

On appeal, Foster asserts the State "presented uncontroverted evidence that the electrical outlet in Shrader's room smoked," presumably as proof of an extreme hazard warranting entry without consent, but he cites to Christina trial testimony. No one testified at the preliminary hearing that the outlet was smoking or sparking. In fact, Shrader testified there were no electrical problems in his room and the outlet had never smoked or sparked. He acknowledged Lentz had Foster check the electricity in the room on at least one occasion but stated Lentz had not given Foster permission to go into his room while he was gone. Lentz testified Shrader had previously complained of electrical problems in the room and she had told Shrader that she would have Foster look and fix any problems. At the preliminary hearing, Lentz claimed she had given Christina and

9

Foster permission to enter Shrader's room to address the issue, but she had previously told Officer Land that she "had given [Christina and Foster] permission to go into the room a month [before the alleged burglary and theft]; however, not on that day."

At the preliminary hearing, the district court resolves conflicts in witness testimony in the light most favorable to the State. Here, Shrader testified there were no electrical problems in his room. Lentz told police she had asked Foster to look at the electricity a month before the crime occurred and she had not given Foster permission to enter Shrader's room on the day he allegedly did so. At the preliminary hearing, there was no evidence Lentz had given reasonable notice to Shrader that Foster would be entering his rented room to make repairs or that an extreme hazard warranted Foster entering the room without Shrader's consent. Foster's claim that he was authorized to enter Shrader's room under K.S.A. 58-2557 is without merit.

In conclusion, the district court did not err in finding probable cause to bind Foster over to trial for burglary. Shrader's rented room constituted a separate dwelling, and Foster's authority to enter Lentz' house did not give him authority to enter Shrader's room. Shrader testified his laptops had been stolen and identified a laptop found in Foster's possession as his own. Christina and Foster told police they had entered Shrader's room on the day the Dell laptop went missing, although they claimed they had entered to address an electrical problem and took only items that belonged to them. Shrader denied there were any electrical problems in the room. Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to establish probable cause to believe that Foster had committed burglary.

Foster next argues the jury had insufficient evidence to convict him of burglary of a dwelling because the State failed to prove beyond a reasonable doubt that he entered Shrader's room (1) without authority and (2) with the intent to commit a theft. According

10

to Foster, because the State failed to prove these essential elements of burglary, we must reverse his conviction.

A criminal defendant's challenge to the sufficiency of the evidence is essentially "a posttrial claim that the State failed to meet its burden of proving each essential element of one or more charges against the defendant." *State v. Logsdon*, 304 Kan. 3, 21, 371 P.3d 836 (2016). These challenges arise only after the factfinder—here, the jury—has determined the facts in the State's favor and convicted the defendant of a charge. Because the jury is charged with determining the facts, we must view all the evidence on appeal in the light most favorable to the State. See *State v. Trautloff*, 289 Kan. 793, 801, 217 P.3d 15 (2009) ("A jury that has convicted a defendant is presumed to have believed the State's evidence and to have drawn from that evidence all inferences favorable to the State."). In that light, we then determine whether we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Brown*, 303 Kan. 995, 1001, 368 P.3d 1101 (2016); *State v. Betancourt*, 301 Kan. 282, 302, 342 P.3d 916 (2015).

In reviewing the sufficiency of the evidence, we do not reweigh evidence, resolve conflicts in the evidence, or assess the credibility of the witnesses. *State v. Bolze-Sann*, 302 Kan. 198, 203, 352 P.3d 511 (2015). Kansas caselaw is also clear that a conviction of even the gravest offense can be based entirely on circumstantial evidence and reasonable inferences from that evidence. *State v. Rosa*, 304 Kan. 429, Syl. ¶ 2, 371 P.3d 915, (2016); *State v. Keel*, 302 Kan. 560, 567, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016).

The district court instructed the jury that to convict Foster of burglary of a dwelling, the State had to prove beyond a reasonable doubt that Foster entered a dwelling without authority with the intent to commit a theft and the act occurred on or between April 18, 2014, and April 20, 2014 in Norton County. See PIK Crim. 4th 58.120; K.S.A.

11

2013 Supp. 21-5807(a)(1). To prove theft, the State was required to establish Foster exercised unauthorized control over Shrader's property with the intent to deprive Shrader permanently of the use or value of his property, the property was worth less than $1,000, and the act occurred on or between April 18, 2014, and April 20, 2014. See PIK Crim. 4th 58.010; K.S.A. 2013 Supp. 21-5801(a)(1), (b)(4).

Foster argues the State failed to prove he had entered Shrader's room without authority, partly reiterating his arguments based on *Hall* made above in regard to probable cause at the preliminary hearing. As discussed above, *Parker* is applicable in this case and, therefore, Shrader's rented room constituted a separate dwelling. Even though Foster had Lentz' permission to be in the house, he did not have authority to enter Shrader's rented room.

Foster also asserts that Shrader's rented room cannot constitute a dwelling because it does not contain a bathroom, dining room, kitchen area, or living space and is separated from the common areas by only a folding door. Kansas law broadly defines "dwelling" as "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." K.S.A. 2015 Supp. 21-5111(k). Despite Foster's assertion otherwise, nothing in the statute requires that a dwelling have a kitchen or bathroom, especially since the statute provides a tent or vehicle may be a dwelling if it is used as a home or residence. Here, Shrader testified his room contained his bed and belongings and he lived in the room by himself. He also described the folding door and the way he locked it. A reasonable jury could find Shrader's rented room fits the statutory definition of "dwelling" because it was an enclosed, separately secured portion of a building where he slept, lived, and kept his belongings.

The jury had sufficient evidence to conclude that Foster had entered Shrader's room without authority. Shrader testified he had been renting from Lentz since his senior

year of high school and had not given Foster permission to enter his room. He stated he secured the door with a padlock and two hook-and-eye latches before he left for work on April 18 and before he left town later that day. He testified that when he had returned from work, he noticed the piece of wood had been moved down on the door frame. The jury saw the police photos depicting the door on April 20, showing the piece of wood was only secured by one nail and a bent nail was lying on the floor. Shrader said Lentz had told him she had not given anyone permission to go into his room on April 18. Officer Land also testified at trial that Lentz had told him she had not given Foster and Christina permission to enter the room that day, though she had given them permission to fix an electrical problem in the room months before the laptops went missing.

Although Christina testified Shrader's door had been open and she had seen sparks coming from the outlet, the jury was free to discredit her testimony, especially given her relationship with Foster. In fact, the jury was properly instructed that it "should consider with caution the testimony of an accomplice." PIK Crim. 4th 51.090; see *State v. Todd*, 299 Kan. 263, 270, 323 P.3d 829, *cert. denied* 135 S. Ct. 460 (2014). Viewing the evidence in the light most favorable to the State, a reasonable jury could conclude that Shrader's room qualified as a dwelling and Foster did not have authority to enter it.

Foster also contends there was insufficient evidence to prove beyond a reasonable doubt that he entered Shrader's room with the intent to commit a theft. To convict Foster, the State had to prove he had the intent to commit the theft at the time he entered Shrader's room without authorization. See *State v. Bowen*, 262 Kan. 705, 709, 942 P.2d 7 (1997); *State v. Harper*, 235 Kan. 825, 828-29, 685 P.2d 850 (1984). But intent at the time of the entry may be proven and inferred from the surrounding facts and circumstantial evidence, like the manner of entry, time of day, the character and contents of the building, the intruder's actions after entry, and any explanation offered by the intruder. *Harper*, 235 Kan. 825, Syl. ¶ 2; *State v. Hargrove*, 48 Kan. App. 2d 522, 564-

13

65, 293 P.3d 787 (2013); *State v. McMillan*, No. 112,802, 2016 WL 463780, at *3 (Kan. App. 2016) (unpublished opinion), *petition for rev. filed* March 7, 2016.

At trial, Shrader testified that when he returned to his room on April 18, not only had the piece of wood to secure the door been moved, but his bed had been flipped over and a bag of trash had been dumped all over the room. Officer Land testified about the condition of the door and the broken nail. Shrader said Foster knew he had a Dell laptop and an HP laptop. Christina's son, Landon, claimed he saw Foster and Christina carrying two laptop-shaped objects while leaving Lentz' house around the time they went missing. Further, Shrader identified the Dell laptop that Landon had found at Christina and Foster's house as his. Officer Land was later able to match the serial number on the recovered Dell laptop to the information provided by Shrader's father. Although Foster, Lentz, and Christina all claimed at various points that Shrader had given Foster the Dell laptop, Shrader denied giving either of his laptops to Foster.

Christina testified she and Foster had gone to Lentz' house on April 18 to get some of Foster's belongings and they entered Shrader's room to address an electrical issue and took only items that belonged to them. While she was estranged from Foster in December 2014, she told police she and Foster had returned to Lentz' house on or around April 20. While there, Foster went upstairs while she stayed downstairs. She claimed she then saw him with an HP laptop that he took apart to use for parts in his other laptops and then threw it away in a dumpster. At trial, after she and Foster had reunited, she testified she had been threatened and coerced by an anonymous person to tell police what she knew about the alleged second incident.

Sufficient circumstantial evidence supports the jury's finding that Foster had the intent to commit a theft when he entered Shrader's room. Shrader's testimony and photos of his room demonstrated that someone broke his door latch and ransacked his room. Later, his missing Dell laptop was located at Foster's house, and Shrader testified he had

14

not given it to Foster. Landon further testified he had seen Foster and Christina leave Lentz' house with two laptop-shaped objects around the time that Shrader's laptops went missing. The State presented evidence Foster had used the HP laptop for parts, and the HP laptop was never recovered. We do not make credibility determinations, but in finding Foster guilty, the jury must have discredited at least some of Christina's testimony. A reasonable jury could conclude that Foster entered Shrader's room with the intent to commit a theft.

Foster further contends the district court abused its discretion in allowing the State to amend the complaint during trial because the amendment resulted in a new offense being charged and prejudiced his substantial rights to have notice of the charges against him and to present a defense.

Under K.S.A. 22-3201(e), "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." In determining whether a complaint or information can be amended, we—like the district court—must ask: (1) Did the amendment charge an additional or different crime? and (2) Were the substantial rights of the defendant prejudiced by the amendment? *State v. Ransom*, 288 Kan. 697, 715-16, 207 P.3d 208 (2009).

Whether the district court violated K.S.A. 22-3201(e) when it allowed the State to amend its complaint is reviewed for an abuse of discretion. *State v. Holman*, 295 Kan. 116, 145, 284 P.3d 251 (2012). A district court abuses its discretion when no reasonable person would agree with the district court or if its decision is based on a factual or legal error. *State v. Shank*, 304 Kan. 89, Syl. ¶2, 369 P.3d 322 (2016). The defendant has the burden of establishing any abuse of discretion. *Holman*, 295 Kan. at 145.

15

The original complaint and information charged Foster with one count of burglary and one of count theft, both of which allegedly occurred "on or about April 18, 2014." The State filed a motion to amend the information 2 days before trial, requesting to change the time frame on both counts to "on or between April 18, 2014, and April 20, 2014." At the opening of the trial, the district court discussed the motion with the parties. The State explained it wanted to amend the information to more closely reflect the evidence it would present that there were possibly two separate incidents occurring on or between those dates. Foster's attorney objected, contending the State was impermissibly attempting to charge a second count of burglary without following the proper procedure. The court determined it would refrain from ruling on the motion until after the State had presented its evidence.

At the close of the State's evidence, the district court again considered the State's motion to amend the information. Foster objected, claiming that amending the information would violate his fundamental rights and due-process rights as the court had not made a probable-cause determination at a preliminary hearing on the potential second burglary. Foster argued the amendment was solely in response to Christina's statement in December 2014, suggesting Foster had entered Shrader's room a second time on April 20 when there had been no previous allegation that Foster had returned to the room after April 18. The State countered that Shrader had testified at the preliminary hearing that his HP laptop had not been missing when he returned from work on April 18 but had been gone when he returned on April 20. According to the State, Foster could not have been surprised and such a change could not impair his defense.

Foster acknowledged Shrader had testified about two incidents at the preliminary hearing but nevertheless he asserted the State should not be allowed to amend the information. Foster argued that allowing the amendment would allow the jury to consider a possible burglary on April 20 that had not been presented at the preliminary hearing and expanding the time frame would confuse the jury because it was going to think the court

16

was endorsing the fact that a burglary had been committed and it was going to think the court was giving it permission to enter a guilty verdict. Foster also questioned whether the court had jurisdiction over the April 20 claim because he had not waived the preliminary hearing on that charge or those facts.

The district court ultimately granted the motion after determining the State was not alleging a different crime or charging an additional crime and the amendment would not affect an alibi defense or statute of limitations. The court concluded that because the State had provided evidence of two possible incidents, either of which could constitute burglary, the court would need to give the jury a specific instruction that to convict Foster, the jurors must unanimously agree "on which act it is that they believe occurred."

Foster contends that in amending the time frame, the State essentially charged him with an additional crime in violation of K.S.A. 22-3201(e) because the jury could convict him for either the alleged incident on April 18 or the one on April 20. But generally, merely expanding the time frame in a complaint does not cause an additional or different crime to be charged. See *Holman*, 295 Kan. at 145-46 (expanding the time frame by 18 days "did not cause an additional or different crime to be charged"); *State v. Wells-Lee*, No. 111,788, 2015 WL 5458526, at *5 (Kan. App. 2015) (unpublished opinion), *rev. denied* 304 Kan. ___ (June 21, 2016).

Foster cites *State v. Spangler*, 38 Kan. App. 2d 817, 173 P.3d 656 (2007), in support of his argument that amending the time frame in a complaint can result in different or additional charges. The State charged Spangler with conspiracy to manufacture methamphetamine. The original complaint failed to allege she had committed any specific overt act in furtherance of the conspiracy because it named only her coconspirators and did not specifically detail what overt act had been committed. At trial, the district court allowed the State to amend the complaint to allege that Spangler had purchased materials to make methamphetamine and assisted in making and

17

delivering it and to expand the time frame from "on or about March 15, 2005, to between October 2004 and March 15, 2005." 38 Kan. App. 2d at 824.

The *Spangler* court found that by changing the name of the party who had allegedly committed the overt acts and specifically naming the overt acts, the State had been allowed to prosecute Spangler with a different crime than alleged in the original complaint. 38 Kan. App. 2d at 827. The court further noted that by expanding the time frame of the crime by 6 months, "the State encompassed additional crimes of manufacturing methamphetamine in the conspiracy charge." 38 Kan. App. 2d at 827. The State substantially altered the charges by changing the named parties and allegations against Spangler as well as substantially expanding the time frame. 38 Kan. App. at 827. Here, the State did not bring additional charges against Foster. The amendment did not change the essential elements of the burglary and theft charges and expanded the time frame by only 2 days. This did not amount to bringing different or additional charges against Foster.

Foster also argues on appeal that the amendment prejudiced his substantial rights because he did not have an opportunity to prepare a defense against the allegation that he entered Shrader's room on April 20 and took the HP laptop. He did not make this argument before the district court and instead contended that (1) he had been denied his right to a preliminary hearing on the second charge and (2) the amendment would confuse the jury and lead jurors to believe that they should find Foster guilty of burglary and theft. See *State v. Holt*, 298 Kan. 469, 477, 313 P.3d 826 (2013) ("'[a] point not raised in the district court cannot be raised for the first time on appeal'").

In *State v. Ferguson*, 221 Kan. 103, 105-06, 558 P.2d 1092 (1976), the court held that amending the dates in the complaint to reflect the evidence presented did not prejudice the defendant because "[i]t was not a critical issue. No statute of limitations was involved. Alibi was not a defense to make dates important. Time was not an element of

18

the offense." The Kansas courts have echoed this sentiment in cases since then. See *Holman*, 295 Kan. at 146-47 (citing *Ferguson*); *State v. Van Cleave*, 239 Kan. 117, 121, 716 P.2d 580 (1986); *State v. Campbell*, No. 113,005, 2016 WL 1274482, at *3 (Kan. App. 2016) (unpublished opinion). Courts also consider whether the amendment could have unfairly surprised the defendant. See *Holman*, 295 Kan. at 146 (given pretrial statements and testimony at preliminary hearing and trial, amendment could not have surprised defendant).

Foster's trial attorney acknowledged that Shrader had testified at the preliminary hearing that his HP laptop had gone missing after the theft of the Dell laptop on April 18 and before he returned home on April 20, suggesting two separate incidents. The original complaint charged Foster with burglary "on or about April 18, 2014" rather than precisely on April 18. The original complaint would arguably cover the alleged April 20 incident. The statute of limitations is not involved. Time is not an essential element to burglary, and Foster admits he did not raise an alibi defense specifically.

Foster cites *Spangler* in support of his argument that the time-frame amendment prejudiced him because he was not able to prepare a defense for the April 20 date as no one had specifically alleged before trial that he had taken anything on that date. As discussed above, in *Spangler* the district court allowed the State to expand the crime's time frame by 6 months, covering many more possible methamphetamine-manufacture dates as part of the conspiracy. The *Spangler* court discussed that the State did not move to amend until it had almost completed presenting its evidence. By that point, the defense counsel had largely completed cross-examination of the State's witnesses and had focused on showing that Spangler was not involved in the March 15 manufacture initially alleged. The *Spangler* court concluded the amendment prejudiced Spangler's rights because she had been unable to present a defense for the 6-month period alleged in the amendment. 38 Kan. App. 2d at 828.

But here, unlike in *Spangler*, the State filed its motion before the trial began, so Foster was aware of the State's intentions to expand the time frame by 2 days. Foster had the opportunity to cross-examine the State's witnesses thoroughly and to put on his own defense. See also *Holman*, 295 Kan. at 147 (holding district court did not err in allowing amendment of complaint after defense had presented its evidence but noted the better practice is to amend the charging document after the State has presented its evidence to allow the defense the opportunity to address the amendment when it presents evidence).

Although Foster contends the State should have brought additional counts of burglary and theft rather than amend the complaint, the State was not required to do so. It is quite common for the State to present evidence of multiple, separate acts, each of which could constitute the crime charged, and not charge each possible act as a separate count. See, *e.g.*, *State v. Moyer*, 302 Kan. 892, 909-10, 360 P.3d 384 (2015); *State v. De La Torre*, 300 Kan. 591, 598, 331 P.3d 815, *cert. denied* 135 S. Ct. 728 (2014); *State v. Colston*, 290 Kan. 952, 961-63, 235 P.3d 1234 (2010). In such cases, the district court should give the jury a special instruction that it must unanimously agree on one particular act that constituted the charged crime in order to convict the defendant, which the court did. See *De La Torre*, 300 Kan. at 596. Foster has failed to show the district court abused its discretion in granting the amendment.

Affirmed.